782 So.2d 489 (2001)
Keith S. SAMUELS and Constance R. Jones-Samuels, Appellants,
v.
KING MOTOR COMPANY OF FORT LAUDERDALE, Appellee.
No. 4D00-725.
District Court of Appeal of Florida, Fourth District.
March 28, 2001.
*492 Jerard C. Heller, Fort Lauderdale, for appellants.
Bonnie S. Satterfield of Bonnie S. Satterfield P.A., Coral Springs, for appellee.
GUNTHER, J.
The Plaintiffs, Keith Samuels and Constance Jones-Samuels, appeal the trial court's order dismissing with prejudice count II (misleading and false advertising), count III (fraud in the inducement and fraud in the performance), and count IV (deceptive and unfair trade practice) of their second amended complaint. They also appeal the trial court's dismissal of count I (breach of contract) for lack of subject matter jurisdiction (amount in controversy below $15,000) with leave to refile in county court. We affirm in part, reverse in part, and remand.
The Plaintiffs alleged that in mid-1998, they went to King Motor Company of Fort Lauderdale to buy a new vehicle. They *493 signed a buyers order containing the following language:
On a credit transaction the purchaser(s) offer is not accepted until (A) signed by a King manager, (B) assigned and acceptable by a Bank or Finance Company, and (C) purchaser(s) and dealer have signed an installment sales contract. This agreement is valid for 5 days from date of signature for vehicles in stock or from notice of vehicle availability when factory ordered.
The buyers order also contained the following provisions:
(2) Manufacturer has reserved the right to change the price to Dealer of new motor vehicles without notice. In the event the price to Dealer of new motor vehicles of the series and body type ordered hereunder is change[d] by Manufacturer prior to delivery of the new motor vehicle ordered hereunder to Purchaser, Dealer reserves the right to change the price of unit of such motor vehicle to purchaser accordingly. If such price of unit is increased by Dealer, Purchaser may, if dissatisfied there with [sic] cancel this order in which event if a used motor vehicle has been traded in as a part of the consideration for such new motor vehicle, such used motor vehicle shall be returned to Purchaser upon payment of a reasonable charge for repairs (if any) or, if such used motor vehicle has been previously sold by Dealer, the amount received therefor, less a selling commission of 15% shall be returned to purchaser.
. . .
(4) If a used motor vehicle has been traded in as part of the consideration herein, the Purchaser hereby expressly gives consent to the Dealer that the Dealer may, at any time, sell said used vehicle. In the event the Order is cancelled under the terms and provisions of this agreement subsequent to the sale of the trade-in, Buyer shall receive from Dealer an amount as provided in paragraph 2 above.
In the general allegations of the complaint, the Plaintiffs claimed that the buyers order did not constitute a contract. According to the Plaintiffs, King Motor told them that the buyers order would constitute a binding contract and obligate them under the terms of the contract if and only if every contingency occurred. Specifically, based upon King Motor's representations and the language of the buyers order itself, the Plaintiffs did not believe King Motor had the right to dispose of their trade-in vehicle until the buyers order became a binding contract.
In reliance on King Motor's representations as well as the terms of the buyers order, the Plaintiffs traded in their used vehicle, accepted delivery of the new vehicle, and executed a vehicle retail installment contract providing, among other things, that the Plaintiffs' downpayment would be $2250 allowed for the trade-in vehicle. King Motor later told them they were disapproved for financing unless they made an additional downpayment of $3000. The Plaintiffs declined, returned the new vehicle to King Motor, and demanded return of their trade-in vehicle, but were told it could not be located. King Motor has continued to refuse to return their trade-in vehicle to them or offer them anything of value in lieu of the trade-in's return.
The Plaintiffs alleged that at no time did the necessary contingencies in the buyers order occur. Specifically, King Motor did not sign the buyers or installment sales contract within five days, and the buyers order was not assigned to or accepted for financing within five days. According to the Plaintiffs, because these contingencies did not occur, the buyers order did not constitute a contract.
*494 From that premise, the Plaintiffs alleged King Motor made two false statements. One false statement was that the entire transaction and all obligations stated in the buyers order (specifically, the Plaintiffs giving permission to King Motor to immediately dispose of their trade-in vehicle) were contingent upon obtaining financing. According to the Plaintiffs, King Motor intended to keep the Plaintiffs' trade-in vehicle even if the contingencies did not occur, and behavior consistent with King Motor's "standard operating procedure." The other false statement was that the trade-in vehicle could not be located. According to the Plaintiffs, King Motor had to know where the trade-in vehicle was because it was still on the lot, already sold, or in the process of being sold.
Although the Plaintiffs generally alleged the buyers order did not constitute a contract, they also alleged, in the alternative, that the buyers order did constitute a contract and that King Motor breached the contract by acting as if the contingencies in the buyers order had occurred and by refusing to return their trade-in vehicle. This is the basis for count I, the breach of contract claim.
King Motor moved to dismiss with prejudice counts II through IV for failure to state a cause of action. According to King Motor, the buyers order was a binding contract and the terms of the buyers order allowed it to dispose of the trade-in vehicle when it was tendered to them. According to King Motor, many other reasons justified dismissing counts II through IV with prejudice, including that the Plaintiffs failed to state (and under these facts, never could state) causes of action for common law fraud, misleading and false advertising, and deceptive and unfair trade practices; that the economic loss rule barred any claims of fraud, misleading and false advertising, and deceptive and unfair trade practices; that Florida Rule of Civil Procedure 1.130(a) allowed dismissal because the Plaintiffs failed to attach the bailment agreement; and that Florida Rule of Civil Procedure 1.420(b) allowed dismissal because the Plaintiffs ignored the court's order to amend their pleading to state a cause of action by failing to correct the deficiencies apparent in their complaint. King Motor also contended that upon dismissal of counts II through IV, count I (the breach of contract claim) should be dismissed for lack of subject matter jurisdiction because the Plaintiffs' recourse was limited under the terms of the buyers order to the value of the trade-in vehicle, which was less than $15,000, the circuit court's jurisdictional limit.
Without stating a reason, the trial court dismissed with prejudice counts II through IV. Regarding count I, the trial court determined that the amount in controversy on that count, standing alone, fell below $15,000, the circuit court's jurisdictional threshold, and accordingly dismissed without prejudice count I for lack of subject matter jurisdiction, giving the Plaintiffs leave to re-file in county court.
We first address King Motor's argument that the buyers order was a binding contract, the terms of which allowed it to dispose of the trade-in vehicle immediately upon the Plaintiffs tendering it. A court must accept the facts alleged in a complaint and exhibits attached to the complaint as true. See Visor v. Buhl, 760 So.2d 274, 275 (Fla. 4th DCA 2000); Abele v. Sawyer, 750 So.2d 70 (Fla. 4th DCA 1999). A court may not go beyond the four corners of the complaint. See Barbado v. Green & Murphy, P.A., 758 So.2d 1173, 1174 (Fla. 4th DCA 2000). Asserting inconsistent allegations in a complaint is permissible. See Fla. R. Civ. P. 1.110(g); Belz Investco Ltd. Partnership v. Groupo *495 Immobiliano Cababie, S.A., 721 So.2d 787 (Fla. 3d DCA 1998).
While occasional language in the buyers order refers to it as an "agreement," specific language in the buyers order states it did not become a binding contract until certain contingencies occurred, that is, unless, within five days, a King Motor manager signed the buyers order, the buyers order was assigned and acceptable for financing, and both parties signed an installment sales contract. Until those things occurred the buyers order was simply an offer by the purchaser to buy a particular vehicle. The Plaintiff alleged King Motor did not sign the buyers order or an installment sales contract within five days, and the buyers order was not assigned to or accepted for financing within five days. The buyers order attached to the second amended complaint supports the Plaintiffs' allegations, at least to the extent it reflects it was not signed by any representative of King Motor.
King Motor's argument would require the court to disregard the Plaintiffs' allegations the buyers order is not a contract and the terms of the buyers order itself to conclude the buyers order was in fact a binding contract, the terms of which (notably, provision (4)) allowed it to immediately dispose of the Plaintiffs' trade-in vehicle. Because a court must accept as true the Plaintiffs' allegations and may not go beyond the four corners of a complaint in reviewing a motion to dismiss, King Motor's argument is improper. See Barbado, 758 So.2d at 1174.
We next address the argument that the Plaintiffs failed to state a claim in counts II through IV. "`To state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief.'" W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc., 728 So.2d 297, 300 (Fla. 1st DCA 1999) (quoting Perry v. Cosgrove, 464 So.2d 664, 665 (Fla. 2d DCA 1985)). "Whether a complaint is sufficient to state a cause of action is an issue of law. Consequently, the ruling on a motion to dismiss for failure to state a cause of action is subject to de novo standard of review." Id. If a complaint does not state a cause of action, the opportunity to amend a complaint should be liberally given, unless it is apparent the pleading cannot be amended to state a cause of action. See Gladstone v. Smith, 729 So.2d 1002 (Fla. 4th DCA 1999).
First we address count II, the Plaintiffs' claims for misleading and false advertising. A cause of action for misleading advertising is defined under section 817.41, Florida Statutes (1997). Section 817.41 provides as follows:
(1) It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.
. . .
(6) Any person prevailing in a civil action for violation of this section shall be awarded costs, including reasonable attorney's fees, and may be awarded punitive damages in addition to actual damages proven. This provision is in addition to any other remedies prescribed by law.
§ 817.41(1), (6), Fla. Stat. (1997). "Misleading advertising" is defined as follows:
(5) The phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, or printed *496 form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.
§ 817.40(5), Fla. Stat. (1997).
Here, the Plaintiffs have alleged that they are a portion of the general public and that King Motor told them the buyers order and all obligations in the buyers order, including the Plaintiffs giving King Motor permission to dispose of their trade-in vehicle, were contingent upon obtaining financing. This, according to the Plaintiffs, was misleading because King Motor intended to hold them to the obligations arising from the buyers order, that is, dispose of the trade-in vehicle, without the Plaintiffs first obtaining financing. But it is not enough to allege a misleading or untrue statement made to the general public or a portion of the general public. Under section 817.40(5), the Plaintiffs must also allege the misleading or untrue statement was made with "the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever ... or to induce the public to enter into any obligation relating to such property or services." Here, the Plaintiffs did not allege that the misleading statement was made with the purpose of selling or disposing of any property. Rather, according to the implications inherent in the allegations, King Motor made the alleged misleading statement for the purpose of inducing the Plaintiffs to give possession of their trade-in vehicle to them. That King Motor might have intended to sell the trade-in vehicle to a third party is unavailing because the "selling" or "disposing" of property mentioned in section 817.40(5) must be related to the misleading statement made to the Plaintiffs. For this reason, given the basic facts of this case, it does not appear that the Plaintiffs could ever state a claim for misleading advertising under sections 817.40(5) and 817.41(1). Accordingly, the trial court did not err in dismissing the misleading advertising claim with prejudice. See Gladstone, 729 So.2d at 1003-05.
Section 817.44, the false advertising statute cited in the second amended complaint, provides as follows:
(1) WHAT CONSTITUTES INTENTIONAL FALSE ADVERTISING.It is unlawful to offer for sale or to issue invitations for offers for the sale of any property, real or personal, tangible or intangible, or any services, professional or otherwise, by placing or causing to be placed before the general public, by any means whatever, an advertisement describing such property or services as part of a plan or scheme with the intent not to sell such property or services so advertised, or with the intent not to sell such property or services at the price at which it was represented in the advertisement to be available for purchase by any member of the general public.
(2) PRESUMPTION OF VIOLATION.The failure to sell any article or a class of articles advertised, or the refusal to sell at the price at which it was advertised to be available for purchase, shall create a rebuttable presumption of an intent to violate this section.
§ 817.44(1)-(2), Fla. Stat. (1997).
The Plaintiffs have waived any appellate argument that the trial court erred in dismissing *497 their false advertising claim by failing to present on appeal any clear argument that the complaint states a cause of action under section 817.144. Notwithstanding that, the Plaintiffs alleged King Motor made the following two false statements: (a) the buyers order and all obligations in the buyers order (specifically, that the Plaintiffs gave permission to King Motor to dispose of their trade-in vehicle) were contingent upon obtaining financing, even though King Motor intended to hold the Plaintiffs to the obligations arising from the buyers order (i.e., dispose of the trade-in vehicle) without them obtaining financing; and (b) the trade-in vehicle could not be located, even though King Motor had to have had some idea where the trade-in vehicle was. The Plaintiffs contended that these false statements constituted "false advertising," in that they constituted "an offer for sale of property and/or an invitation for an offer for sale of property as part of a plan or scheme not to sell the property pursuant to the terms stated in said Buyers Order." But this is not what section 817.44 prohibits. Section 817.44 prohibits an advertisement offering to sell property when the proposed seller has no intention of either actually selling the advertised property or of selling the property for the price advertised. See § 817.44(1). Thus, the Plaintiffs have not stated a cause of action for false advertising under section 817.44.
Moreover, the Plaintiffs "readily concede" that the buyers order is not "advertising" as the term is generally used. They attempt to argue that the buyers order is "advertising" as defined by statute, but the only definition they cite is the definition of "misleading advertising" under section 817.40(5). The definition of "misleading advertising" under section 817.40(5) has no application to the term "false advertising" used in section 817.44. Compare § 817.40 with § 817.44. Because the Plaintiffs offer no further argument why the buyers order should constitute advertising under section 817.44, it appears the Plaintiffs could not state a cause of action for false advertising under section 817.44. Accordingly, any allegations pertaining to false advertising were properly dismissed with prejudice for failure to state a cause of action.
We next consider whether count III states a claim for common law fraud. To state a cause of action for fraud in the inducement, the Plaintiff must allege (a) a misrepresentation of a material fact; (b) that the representor of the misrepresentation knew or should have known of the statement's falsity; (c) that the representor intended that the representation would induce another to rely and act on it; and (d) that the plaintiff suffered injury in justifiable reliance on the representation. See Hillcrest Pac. Corp. v. Yamamura, 727 So.2d 1053 (Fla. 4th DCA 1999).
In count III, the Plaintiffs simply reaverred allegations from previous paragraphs. They included the general allegations of the second amended complaint, but they failed to reaver the allegations regarding the false statements King Motor made. The Plaintiffs admit that count III contains only allegations amounting to breach of contract, but they contend that this was an oversight and they should be allowed to amend their complaint. We agree.
Looking at the second amended complaint as a whole, there are allegations that would satisfy the elements of fraud in the inducement. The Plaintiff alleged King Motor told them they would not be bound by the terms of the buyers order, which King Motor knew to be a false statement because it intended to immediately dispose of the trade-in vehicle pursuant to the terms of the buyers order, and that the *498 purpose of telling them this false statement was to induce them to sign the buyers order, buy a new vehicle, and tender their trade-in vehicle. The Plaintiffs also alleged that as a result of their reliance on King Motor's misrepresentation, they were damaged. If these allegations were specifically realleged in reference to a count for fraud in the inducement, they would be sufficient to state a claim for fraud in the inducement. See id. at 1055. Moreover, contrary to King Motor's position, the economic loss rule does not bar the Plaintiffs' fraud in the inducement claim because fraudulent inducement is a tort independent from any underlying contract. See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996). Thus, while it may have been technically proper for the trial court to dismiss count III, the trial court abused its discretion by dismissing it with prejudice and not allowing the Plaintiffs the opportunity to amend their complaint. See Gladstone, 729 So.2d at 1003-05.
The Plaintiffs argue they have also sufficiently stated a cause of action for fraud in the performance. By failing to explain why their allegations are sufficient to state a claim for fraud in the performance, the Plaintiffs have fallen short of their burden on appeal to show "clearly, definitely, and fully" how the trial court reversibly erred. E & I, Inc. v. Excavators, Inc., 697 So.2d 545 (Fla. 4th DCA 1997).
Notwithstanding that, because fraud in the performance cases involve misrepresentations related to the breaching party's performance of a contract and thus fraud in the performance is inextricably linked to breach of contract, the economic loss rule bars the Plaintiffs' cause of action for fraud in the performance. See La Pesca Grande Charters, Inc. v. Moran, 704 So.2d 710 (Fla. 5th DCA 1998); Bankers Risk Mgmt. Servs., Inc. v. Av-Med Managed Care, Inc., 697 So.2d 158 (Fla. 2d DCA 1997). In so ruling, we reject the Plaintiffs' argument that language in Moransais v. Heathman, 744 So.2d 973 (Fla. 1999), indicates the economic loss rule cannot, in any circumstance, apply in any case except a products liability action. Thus, the trial court did not err in dismissing with prejudice the Plaintiffs' claim for fraud in the performance.
We next consider whether the Plaintiffs stated a claim in count IV under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). FDUTPA provides in pertinent part as follows:
501.204 Unlawful acts and practices.
(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
(2) It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1).
501.211 Other individual remedies.
(1) Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.
(2) In any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such consumer may recover actual damages, plus attorney's fees and court costs *499 as provided in s. 501.2105; however, no damages, fees, or costs shall be recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.
§§ 501.204, 501.211(1)-(2), Fla. Stat. (1997).
While the Legislature does not define what "an unfair or deceptive act" is, it has mandated that FDUTPA is to be liberally construed. See § 501.202, Fla. Stat. (1997). The Legislature has also specifically stated that great weight should be given to federal cases interpreting the federal counterpart of this Act. See § 501.204(2); Urling v. Helms Exterminators, Inc., 468 So.2d 451 (Fla. 1st DCA 1985). An unfair practice under the federal statute has been defined as one that "offends established public policy" and one that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Spiegel, Inc. v. Fed. Trade Comm'n, 540 F.2d 287, 293 (7th Cir.1976). Florida courts have held that a plaintiff who alleges that a dealership intentionally concealed he was entering a lease agreement rather than a sales agreement and that as a consequence he was deprived of his trade-in vehicle states a cause of action under FDUPTA. See Cummings v. Warren Henry Motors, Inc., 648 So.2d 1230 (Fla. 4th DCA 1995). Moreover, the economic loss rule does not bar a FDUTPA claim. See Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602 (Fla. 2d DCA 1997); see also Comptech Int'l, Inc. v. Milam Commerce Park, Ltd., 753 So.2d 1219, 1222, 1223 (Fla.1999) (economic loss rule does not bar statutory causes of action, particularly when the statutory language providing the cause of action makes clear the statutory remedy is in addition to other available remedies).
As with the Plaintiffs' count for common law fraud, it appears that the Plaintiffs' FDUTPA count inadvertently failed to reallege the general allegations regarding the false statements they claim King Motor made. Because of that, the allegations contained in count IV failed to state a cause of action under FDUTPA. Considering the sum of all allegations in the Plaintiffs' second amended complaint, however, the Plaintiffs could state a cause of action under FDUTPA.
The Plaintiffs alleged King Motor represented to them that they were not entering into a contract, induced them to sign the buyers order, and then immediately acted as if by signing the buyers order, the Plaintiffs had given them permission to immediately dispose of their trade-in vehicle, even though the contingencies that transformed the buyers order into a contract never occurred. According to the Plaintiffs, King Motor never once offered to compensate the Plaintiffs for the disposal of their trade-in vehicle. This behavior offends public policy and is immoral, unethical, and substantially injurious to consumers situated similarly to the Plaintiffs, who are left without a vehicle and likely little ability to get one because they no longer have a trade-in vehicle as a down-payment and cannot secure affordable financing. Thus, given the sum of the allegations in the second amended complaint and taking them as true, the Plaintiffs could state a cause of action under FDUTPA. See § 501.204, Fla. Stat. (1997); Delgado, 693 So.2d at 611; Cummings, 648 So.2d at 1233. Accordingly, the court erred in failing to give the Plaintiffs leave to amend their FDUTPA claim and instead dismissing it with prejudice. See Gladstone, 729 So.2d at 1003-05.
We turn next to the alternative theories of dismissal King Motor raised in its motion to dismiss and on appeal. King *500 Motor contends that the second amended complaint was properly dismissed under Florida Rule of Civil Procedure 1.130 because the Plaintiffs failed to attach a copy of the bailment agreement the Plaintiffs signed when they accepted delivery of the new vehicle. We disagree.
Florida Rule of Civil Procedure 1.130(a) provides that all contracts or documents "upon which action may be brought ... shall be incorporated in or attached to the pleading." When a party brings an action based upon a contract and fails to attach a necessary exhibit under Rule 1.130(a), the opposing party may attack the failure to attach a necessary exhibit through a motion to dismiss. See Safeco Ins. Co. v. Ware, 401 So.2d 1129, 1130 (Fla. 4th DCA 1981). Where a complaint is based on a written instrument, the complaint "does not state a cause of action until the instrument or an adequate portion thereof is attached to or incorporated in" the complaint. Id.
The bailment agreement, which King Motor attached to its motion to dismiss, states that the Plaintiffs possessed the new vehicle on loan only and that if financing fell through, the Plaintiffs were required to return it to King Motor and pay a certain amount for the privilege of using it. On its face, the bailment agreement is not relevant to whether the buyers order constituted a contract or whether King Motor had the authority to immediately sell or otherwise dispose of the Plaintiffs' trade-in vehicle, which are the issues upon which the Plaintiffs' complaint focuses. By attaching the bailment agreement to its motion to dismiss and arguing it was integral to disposition of this case when on its face the bailment agreement is unrelated to the Plaintiffs' complaint, King Motor improperly attempted to interject issues outside the four corners of the complaint. See Barbado, 758 So.2d at 1174; Mancher v. Seminole Tribe of Fla., Inc., 708 So.2d 327 (Fla. 4th DCA 1998). Moreover, because the Plaintiffs' complaint focuses only on the propriety of King Motor's actions in disposing of the trade-in vehicle and not whether King Motor could force the Plaintiffs to return the new vehicle and pay a certain rate for using it, Rule 1.130(a) did not require the Plaintiffs to attach the bailment agreement to their complaint.
King Motor also contends that the Plaintiffs complaint should be dismissed under Florida Rule of Civil Procedure 1.420(b) because the Plaintiffs failed to amend their complaint to state a cause of action after the trial court dismissed prior complaints for failure to state claims and granted them leave to amend. Florida Rule of Civil Procedure 1.420(b) provides, "Any party may move for dismissal of an action or of any claim against that party for failure of an adverse party to comply with these rules or any order of court." Dismissing a complaint as a sanction under Rule 1.420(b) for failure to comply with orders of the court to amend a complaint to state a cause of action is generally unnecessary, as dismissal is always available where the complaint does not state a cause of action. See Cummings, 648 So.2d at 1232. Notwithstanding that, dismissal as a sanction under Rule 1.420(b) is erroneous where the trial court fails to make an express written finding of a party's willful refusal to obey the court order or contumacious disregard of the court's order. See id.
Here, the trial court made no finding of willful refusal or contumacious disregard. Accordingly, the trial court could not have properly dismissed the second amended complaint as a sanction under Rule 1.420(b). See Cummings, 648 So.2d at 1232. Moreover, dismissal with prejudice was improper because the Plaintiffs either did state causes of action or could, with some amendment, state causes of action. See id.
*501 King Motor further contends that courts are justified to dismiss a complaint with prejudice simply because a plaintiff has had three ineffective attempts to state a cause of action. This is incorrect.
"Leave of court shall be freely given when justice so requires." Fla. R. Civ. P. 1.190(a). While the number of times a plaintiff has been allowed leave to amend may impact whether justice requires granting leave to amend, in the sense that a court should consider the effect defending against frivolous litigation would have on a defendant, see Kohn v. City of Miami Beach, 611 So.2d 538, 539 (Fla. 3d DCA 1992), considerations of justice do not revolve solely around the impact on a defendant of extending litigation. As this Court has stated, "A claim should not be dismissed with prejudice `without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action.'" Gladstone, 729 So.2d at 1003 (quoting Kairalla v. John D. and Catherine T. MacArthur Found., 534 So.2d 774, 775 (Fla. 4th DCA 1988)).
Here, the Plaintiffs have amended their complaint only twice, not the four to ten times sometimes seen in other cases. See Gladstone, 729 So.2d at 1004; Kohn, 611 So.2d at 539. The Plaintiffs have not abused the pleading process. Moreover, it appears the Plaintiffs either have, or could with minor change, state a cause of action upon the facts they have alleged. The Plaintiffs' interest in resolving this case on the merits outweighs any "time, effort, energy, and expense" King Motor might incur by continuing to defend itself at this juncture. Kohn, 611 So.2d at 539. Accordingly, the trial court would not have been justified in dismissing the second amended complaint with prejudice simply because the Plaintiffs have tried three times to state a cause of action.
Finally, we address the trial court's dismissal of count I, the Plaintiffs' breach of contract claim. The trial court apparently reasoned that standing alone, without all other counts of the second amended complaint, the breach of contract count did not reach the $15,000 amount in controversy necessary to confer subject matter jurisdiction on the circuit court. This Court has determined that the trial court erred in dismissing with prejudice the Plaintiffs' claims for fraud in the inducement and deceptive and unfair trade practices. Upon remand, if the Plaintiffs file a third amended complaint, they are free to include a count for breach of contract, if they so choose, at which time the trial court can reconsider its jurisdictional ruling.
We affirm the trial court's order to the extent it dismisses with prejudice the Plaintiffs' claims for misleading advertising, false advertising, and fraud in the performance. In all other respects, the trial court's order is reversed, and we remand for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
POLEN and STEVENSON, JJ., concur.