In re EDGEWATER BY THE BAY, LLLP, Debtor.

Edgewater by the Bay LLLP, Plaintiff/Counterdefendant.

v.

Beatrice Gaunchez, et al., Defendants/Counterclaimants.

Bankruptcy No. 08–23611–BKC–RAM.
Adversary No. 09–01138–BKC–RAM–A.

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

Oct. 30, 2009.

Peter D. Russin, Esq., Meland Russin & Budwick, P.A., Miami, FL, for Debtor.

David P. Reiner, II, Esq., Miami, FL, for Defendants, Areson, Barroso, Gaunchez, Bonvini, Hamm, Landers, Levy, Romanello, Rose, Weiss, Westring & Shahar.

Elizabeth Lee Beck, Esq., Miami, FL, for Defendant, Benitez.

### *MEMORANDUM OPINION AND ORDER GRANTING, IN PART, DEBTOR'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS/COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT*

ROBERT A. MARK, Bankruptcy Judge.

Condominium values have dropped substantially in South Florida in the past two years. As a result, the contract price in many pending purchase contracts significantly exceeds the current market value of the unit. Not surprisingly, most prospective buyers do not want to close on those above-market contracts. Many are hiring counsel and asserting various legal theories in an effort to rescind the contracts and obtain a return of their deposits.

In this adversary proceeding, the Plaintiff seeks a declaration that the Defen-

dants who entered into contracts to purchase condominium units from the Plaintiff have breached their contracts by attempting to rescind and refusing to close. The Defendants have filed counterclaims alleging various theories for legally terminating the contracts and obtaining a refund of their deposits. Cross motions for summary judgment are pending.

The issue addressed by this Order is whether the Defendant/Counterclaimants can lawfully rescind based on the Debtor's alleged violations of § 489.1425 and § 718.202(8), Florida Statutes and § 8–18 of the Code of Miami–Dade County (the "County Code"). The narrow and determinative legal issue is whether these alleged violations give rise to a cause of action under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA"). The Court concludes that violations of these provisions do not fall within the scope of FDUTPA violations as defined in Fla. Stat. § 501.203(3) since the provisions do not target unfair or deceptive trade practices. Therefore, violations of these provisions do not support a FDUTPA claim and Plaintiff is entitled to summary judgment on Counts II, III and IV of the counterclaims.

### Background

The material facts relating to the FDUTPA claims are undisputed. The Plaintiff, Edgewater by the Bay, LLLP ("Plaintiff" or "Debtor"), is a Florida limited liability limited partnership that owns and is currently developing certain real property located in Miami–Dade County, known as IOS on the Bay. The project consists of 45 residential units with varying floor plans. Prior to construction, Debtor marketed the project and entered into 33 purchase and sale agreements ("Contracts") with third parties ("Purchasers") for individual units. In connection with the Contracts, Purchasers tendered initial deposits in the amount of 10% of the purchase price for the individual unit, and some Purchasers tendered a second 10% deposit. The deposits are being held in escrow by the Debtor's agent, Meland, Russin & Budwick, P.A., f/k/a Meland, Russin, Hellinger & Budwick, P.A. ("Escrow Agent"). That law firm also served as counsel for the Debtor prepetition and is counsel for the Debtor in this proceeding, and in the underlying Chapter 11 bankruptcy case.

On September 18, 2008, Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, citing setbacks in construction and the failing housing market. Shortly thereafter, the Debtor commenced this global adversary proceeding against a number of the Purchasers for breach of contract for attempted recision and/or refusal to close under the Contracts [CP# 1]. An Amended Complaint [CP# 44] was filed on April 20, 2009. A number of the Defendants have filed counterclaims against the Debtor alleging procedural violations of the Florida Condominium Act, Fla. Stat. §§ 718.101 *et seq.*, violations of FDUTPA, and breach of contract based on Debtor's alleged failure to timely complete the project (collectively, the "Counterclaims"). The Counterclaimants seek recision of their contracts and turnover of their deposits.

On July 15, 2009, certain Counterclaimants filed their Motion for Partial Summary Judgment or Partial Judgment on the Pleadings as to Counts II & III of their Counterclaims [CP# 126] ("Counterclaimants' Motion for Summary Judgment"). The parties to the Counterclaimants' Motion for Summary Judgment are parties to 12 of the 19 Contracts at issue in this proceeding. Defendant, Giovanni Benitez, filed a joinder in the motion [CP# 134]. Thereafter, Debtor filed

cross-motions for summary judgment on all counts of its complaint and all counterclaims asserted by each of the Defendants [CP# s 140, 141, 144, 146, 148, 150, 152, 153, 156, 158, 159 & 162] ("Debtor's Motions for Summary Judgment"). On September 23, 2009, the Court conducted a hearing on the summary judgment motions. The court has reviewed the pleadings, applicable case law and statutes and considered the oral arguments presented by counsel. By separate Order, the Court is denying the Debtor's Motions for Summary Judgment on all counts of the Complaint. This Order addresses only the three counts of the Counterclaims seeking relief under FDUTPA. For the reasons that follow, the Court concludes that the FDUTPA claims fail as a matter of law. Thus, Counterclaimants' Motion for Summary Judgment on those counts will be denied and Debtor's Motions for Summary Judgment on these counts will be granted.

### Discussion

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgement as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. The burden of proof falls on the moving party. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). To defeat a motion for summary judgment, the non-moving party must show more than the mere existence of doubt as to the facts of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Florida's Deceptive and Unfair Trade Practices Act

Counts II and III of the Counterclaims subject of Counterclaimants' Motion for Summary Judgement [CP# 14] allege that Debtor violated FDUTPA by either including certain language in the Contracts, in

the case of Florida Statutes § 489.1425, or excluding certain language from the Contracts, in the case of § 8–18 of the County Code. Count IV of the Counterclaim alleges that Debtor violated FDUTPA because its Escrow Agent was an employee and advocate of the Debtor in violation of Florida Statutes § 718.202(8). A more specific description of these provisions follows.

First, Counterclaimants rely on Fla. Stat. § 489.1425. That section, part of Chapter 489 regulating the construction industry, provides:

(1) Any agreement or contract for repair, restoration, improvement, or construction to residential real property must contain a written statement explaining the consumer's rights under the recovery fund, except where the value of all labor and materials does not exceed $2,500. The written statement must be substantially in the following form:

FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND

PAYMENT MAY BE AVAILABLE FROM THE FLORIDA HOMEOWNERS' CONSTRUCTION RECOVERY FUND IF YOU LOSE MONEY ON A PROJECT PERFORMED UNDER CONTRACT, WHERE THE LOSS RESULTS FROM SPECIFIED VIOLATIONS OF FLORIDA LAW BY A LICENSED CONTRACTOR. FOR INFORMATION ABOUT THE RECOVERY FUND AND FILING A CLAIM, CONTACT THE FLORIDA CONSTRUCTION INDUSTRY LICENSING BOARD AT THE FOLLOWING TELEPHONE NUMBER AND ADDRESS.

Counterclaimants allege that the Debtor violated this statute, not by failing to include this language, but rather by wrongfully including it in the Contracts. They argue that since the disclosure references a fund that is only available to satisfy

claims against a contractor, it was misleading and deceptive to include it in a contract with the Debtor developer.

Second, Counterclaimants cite to an alleged violation of § 8–18 of the County Code. That section requires purchase contracts for new structures to include the following disclosure:

THIS STRUCTURE (HAS BEEN OR WILL BE) BUILT IN COMPLIANCE WITH THE FLORIDA BUILDING CODE AS DETERMINED BY STATE LICENSED AND REGISTERED ARCHITECTS AND ENGINEERS PRIVATELY HIRED BY THE OWNER AND APPLICANT FOR PERMITS TO PERFORM CERTIFICATION OF PLANS AND INSPECTIONS AS PROVIDED UNDER STATE LAW. THE NAME, ADDRESS, TELEPHONE NUMBER, AND STATE LICENSE NUMBER OF EITHER EACH INDIVIDUAL THAT IS WORKING ON HIS/HER OWN AS AN INDEPENDENT ARCHITECT OR ENGINEER OR THE PRINCIPAL OF THE COMPANY THAT IS USED TO EXAMINE PLANS AND INSPECT THIS STRUCTURE; ARE AS FOLLOWS:

Counterclaimants argue that omitting this disclosure violated FDUTPA.

Finally, Counterclaimants assert that the Debtor violated FDUTPA because its escrow agent was not independent as required by Fla. Stat. § 718.202(8). That section provides, in relevant part, as follows:

Every escrow agent shall be independent of the developer, and no developer, or any officer, director, affiliate, subsidiary, or employee of a developer may serve as escrow agent.

Counterclaimants allege that the Debtor violated this provision because its escrow agent was also its attorney.

To prevail on their FDUTPA claims, the Counterclaimants must establish that the particular Florida Statutes and County Code provisions just described are within the purview of Fla. Stat. § 501.203(3)(c). That section states that FDUTPA violations include violations of:

[A]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

Fla. Stat. § 501.203(3)(c).

The words of the statute are arguably broad in scope, particularly the terms relied on by the Counterclaimants, "unfair" or "deceptive" acts or practices. A closer examination of the statute, however, and relevant case law interpreting these terms, reveals that the Florida Statutes and County Code sections at issue here are not within the scope of FDUTPA.

FDUTPA was enacted in order to protect the consuming public from unfair methods of competition, and unconscionable, deceptive, and unfair trade practices. Fla. Stat. § 501.202. It "is designed to protect not only the rights of litigants, but also the rights of the consuming public at large." *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000). Although the elements of a cause of action under FDUTPA are not defined in the statute, Florida courts have required plaintiffs to establish the following three elements: "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Kia Motors America Corp. v. Butler*, 985 So.2d 1133, 1140 (Fla. 3d DCA 2008); *KC Leisure, Inc. v. Haber*, 972 So.2d 1069, 1073 (Fla. 5th DCA 2008); *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F.Supp.2d 1350 (M.D.Fla.2007).

The statute expressly provides that in analyzing what constitutes an unfair practice or deceptive act, "due consideration

and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2006." Fla Stat. § 501.204(2); *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th DCA 2001). In addition, Fla. Stat. § 501.203(3)(b) states that the court should look to "[t]he standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts." Fla. Stat. § 501.203(3)(b).

A deceptive act has been defined by both Florida and federal courts as one that is likely to mislead consumers. *Davis*, 776 So.2d at 974; *IN RE INTERNATIONAL HARVESTER CO.*, 104 F.T.C. 949 (1984); *In the Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984); *Southwest Sunsites, Inc. v. Federal Trade Comm'n*, 785 F.2d 1431 (9th Cir.1986). Florida courts have construed the federal unfair practice standard as an act that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Samuels*, 782 So.2d at 499 (quoting *Spiegel, Inc. v. Fed. Trade Comm'n*, 540 F.2d 287, 293 (7th Cir.1976) (internal citations omitted)); *see also F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972) (citing the factors a court should consider in analyzing whether a particular practice is unfair). In the context of deceptive advertising, another Florida appellate court has held that the Federal Trade Commission standard requires "a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Millennium*

*Communications & Fulfillment, Inc. v. Office of Atty. Gen.*, 761 So.2d 1256, 1263 (Fla. 3d DCA 2000), (citing *Southwest Sunsites Inc. v. Federal Trade Comm'n*, 785 F.2d 1431, 1434–35 (9th Cir.1986)).

■ Here, Counterclaimants assert that Debtor's alleged violations of the two cited Florida Statute sections and County Code § 8–18 are *per se* violations of FDUTPA under § 501.203(3)(c), arguing that a violation of ***any*** statute or rule providing consumer protection may provide the basis for a FDUTPA claim. Based on the federal and state standards discussed above, the Court finds that this interpretation of FDUTPA is overly broad and unfounded. Violations of laws or statutes that give rise to a FDUTPA claim must be of the kind that proscribe unfair trade practices or unfair methods of competition; not, as the Counterclaimants suggest, a violation of any law or statute that may have some benefit to consumers. Under this scrutiny, neither of the Florida statutory sections nor the County Code section fall under FDUTPA.

### Florida Statutes § 489.1425

■ The Contracts at issue included reference to the Florida Homeowners' Construction Recovery Fund, a disclosure mandated by Fla. Stat. § 489.1425. The remedy is a fund of last resort for homeowners who have been damaged by a licensed contractor's financial mismanagement or misconduct. A contract to purchase a completed residence from a developer is not eligible to collect from the recovery fund.[1] Counterclaimants argue that inclusion of this language was *per se* misleading because the remedy is illusory.

---

1. Frequently asked Questions Regarding the Recovery Fund for the Construction Industry Licensing Board (2005), http://www. myflorida.com/dbpr/pro/cilb/documents/recov faqs.pdf.

The stated purpose of chapter 489 of the Florida Statutes is that "[i]t is necessary in the interest of the public health, safety and welfare to regulate the construction industry." *See Murthy v. N. Sinha Corp.*, 644 So.2d 983 (Fla.1994) (citing Fla. Stat. § 489.101). Since this law does not regulate unfair trade practice or competition, the Court concludes that a violation of § 489.1425 cannot be a *per se* violation of FDUTPA under § 501.203(3)(c).

■ Even if the Counterclaimants alleged that the inclusion of the Florida Homeowners' Construction Recovery Fund disclosure was a violation of FDUT-PA independent of violating Fla. Stat. § 489.1425, a position withdrawn by counsel at oral argument, the alleged wrongful disclosure is not actionable under FDUT-PA. The Debtor never held itself out as a contractor or created the perception that it was a contractor. Advising a purchaser of a remedy that may, or may not, be available to a purchaser of a residence, is simply not an unfair trade practice or deceptive act. Therefore, including the disclosure required by this provision, even if the disclosure did not apply to a purchaser's possible claims against the developer, was not the type of immoral or unscrupulous conduct FDUTPA proscribes; nor was it a "representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Millennium Comm. & Fulfillment v. Office of Atty. Gen.*, 761 So.2d at 1263. Thus, the allegations in Count II do not state a claim for violation of FDUTPA.

### Code of Miami–Dade County § 8–18

■ Purchasers also contend that Debtor violated FDUTPA by not including a disclosure required by § 8–18 of the Code of Miami–Dade County. As quoted earlier, this section provides that any contract for purchase of a new structure in Miami–Dade County shall include a disclosure of all architects and engineers who worked on and inspected said property. According to Counterclaimants, Plaintiff's failure to provide the disclosure is a violation of the County Code and may lead to criminal penalties. However, like § 489.1425 of the Florida Statutes, § 8–18 of the County Code is not a consumer protection law, nor can the failure to include this disclosure be reasonably considered an unscrupulous act likely to deceive the public. Therefore, the Court finds that section 8–18 of the County Code is not a statute or ordinance within the definition of § 501.203(3)(c) of FDUTPA. As such, the alleged violation of this section does not support the FDUT-PA claim alleged in Count III of the Counterclaims.

### Florida Statutes § 718.202(8)

■ Although not the subject of Counterclaimants' Motion for Summary Judgment, Counterclaimants allege in Count IV of their Counterclaims that Debtor violated FDUTPA because its Escrow Agent was an employee and advocate of the Debtor in violation of Florida Statutes § 718.202(8), requiring developers to retain an independent escrow agent. This count fails for three reasons. First, utilizing counsel as an escrow agent is not a violation of the statute. Specifically, Florida's Administrative Code § 61B–20.003 provides that one who is otherwise qualified to serve as an escrow agent is not precluded from serving solely because "[a] non-employee attorney-client relationship exists between the developer and the escrow agent, including representation of the developer in legal matters relating to the condominium for which he serves as escrow agent." Fla. Admin. Code § 61B–20.003. Second, like Fla. Stat. § 489.1425 and § 8–18 of the County Code, Fla. Stat.

§ 718.202(8) is not a statute "which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" within the meaning of FDUTPA § 501.203(3)(c). Finally, even if Counterclaimants could prove that the Escrow Agent was not independent under § 718.202(8), Counterclaimants cannot allege actual damage from this violation since there is no allegation that any funds were not properly maintained in escrow.

### *Conclusion*

The Florida Statutes and Code of Miami–Dade County contain numerous provisions regulating the construction industry and the sale of condominiums. Compliance with these provisions certainly provides benefits to the public. This does not mean, however, that violations of these laws or county codes are violations of laws or code provisions giving rise to claims under Florida's Deceptive and Unfair Trade Practices Act. As described in this opinion, the alleged violation by the Plaintiff of the two Florida statutory sections and County Code section cited in Counts II, III and IV of the Counterclaims do not state claims under FDUTPA. These provisions are not laws or ordinances intended to target unfair trade practices. Defendants have some remaining defenses and counterclaims but their effort to rescind their Contracts based on deceptive or unfair trade practices fails as a matter of law.

Therefore, it is ORDERED that the Counterclaimants' Motion for Summary Judgment is denied and the Debtor's Motions for Summary Judgment are granted as to Counts II, III and IV of the Counterclaims. The remaining issues raised in Debtor's Motions for Summary Judgment are addressed by separate Order.