DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SBP HOMES, LLC,**
a Florida limited liability company,
Appellant,

v.

**84 LUMBER COMPANY,**
Appellee.

No. 4D2022-2603

[February 21, 2024]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Janet Carney Croom, Judge; L.T. Case No. 312020CA000046.

Christopher N. Bellows of Holland & Knight LLP, Miami, and Daniel Mahfood of Holland & Knight LLP, Jacksonville, for appellant.

Raymond T. Elligett, Jr. and Shirley T. Faircloth of Buell & Elligett, P.A., Tampa, and Hardy L. Roberts of Carey, O'Malley, Whitaker, Mueller, Roberts & Smith, P.A., Tampa, for appellee.

WARNER, J.

Appellant SBP Homes, LLC, challenges the dismissal with prejudice of its breach of contract and negligence complaint against appellee for defective installation of windows and doors on a home for which SBP was general contractor. The trial court dismissed all claims, relying on a document to which the complaint referred, but which was not attached to the complaint. We conclude that the court erred in relying on the agreement, because the document did not compel dismissal of the negligence and breach of implied contract counts as pled. We therefore reverse the dismissal of those two counts. We affirm the dismissal of the contractual indemnity count.

**Background**

SBP subcontracted with 84 Lumber to provide and install windows, doors, and hardware at a home for which SBP was the general contractor.

SBP was sued by the homeowners for construction defects and damages. SBP in turn sued 84 Lumber, along with several other subcontractors, in a third-party complaint which was amended several times.  SBP filed a Fourth Amended Third-Party Complaint against 84 Lumber, which 84 Lumber moved to dismiss, and the court granted the motion.  This appeal is based on the dismissal of the Fourth Amended Third-Party Complaint.

SBP's operative complaint against 84 Lumber alleged causes of action for breach of a contract implied in fact, negligence, and contractual indemnity.[1]  As to the breach of implied contract count, SBP alleged that it had contracted with 84 Lumber for purchase and installation of the windows with the contractual obligations being based on both writings and the conduct of the parties.  Specifically, the complaint alleged: "Pursuant to both verbal and written negotiations with Third-Party Defendant, 84 LUMBER, SBP executed a 'Subcontract Agreement' on or about May 26, 2017 as well as a credit agreement.  (See, Exhibit 'F' attached hereto)." Exhibit F consisted of a subcontract agreement between SBP and 84 Lumber, signed only by SBP, and a cost proposal from 84 Lumber, accepted by SBP for the windows and doors plus installation.  The Credit Agreement, however, was not attached to the Fourth Amended Third-Party Complaint.

SBP claimed that the homeowner plaintiffs had alleged the doors and windows were defective and improperly installed.  While SBP had denied those allegations, SBP alleged that "[t]o the extent that Plaintiffs' allegations are found to be true, Third-Party Plaintiff has been damaged by Third-Party Defendant, 84 LUMBER's, material breach of contract implied in fact."

As to the negligence count, SBP alleged that 84 Lumber supplied and installed materials which it had an obligation to assure were in compliance with "the manufacturer's recommendations, the approved plans and specifications and proper construction practices."  SBP alleged that 84 Lumber breached its duty of care by supplying defective windows and doors and installing them contrary to recommendations, building codes, and proper construction practices.

In moving to dismiss the operative complaint, 84 Lumber alleged that it had not signed the subcontract agreement, or the Credit Agreement referred to in the complaint, precluding SBP's causes of action.  The Credit Agreement, attached to the motion, was dated several months prior to the

---

[1] The complaint also alleged a common law indemnity claim that SBP dismissed voluntarily.

unsigned subcontract and was signed by both parties. The Credit Agreement states that it is a "Credit Application," and by signing SBP agrees "to accept credit extended by 84 Lumber . . . subject to the terms and conditions set forth herein." The agreement did not specify that it applied to a particular construction project. On the front of the Credit Agreement, SBP is listed as the applicant and two individuals signed as the owners of SBP and as guarantors of payment. The signors also acknowledged agreement to the list of terms on the back of the one page agreement. Most of the provisions on the back dealt with how future delivery of products, invoices, and payments would be made. Importantly, the agreement's paragraph 12 states:

> The entire agreement of the parties is set forth in this written document and there are no other oral or written understanding, promises, representation, or agreements. This Agreement cannot be modified or amended except that 84 may change the terms and conditions of this Agreement as set forth in Paragraph 8 above; and this Agreement shall supersede all previous communications, representations, or agreements, either verbal or written, between the parties hereto. This Agreement shall take precedence, supersede and control over any conflicting or additional terms contained in purchase orders, contracts or other similar documents issued by the parties and no such documents shall be binding upon 84 unless approved and signed by an authorized officer of 84 . . . .

Also, the agreement's paragraph 14 also provided:

> In no event shall 84 be liable for liquidated, incidental, punitive or consequential damages in connection with building materials or installation purchased by Applicant, 84 disclaims any express or implied warranties of merchantability or fitness for a particular purpose on building materials or installation purchased by Applicant. In no event shall 84's liability exceed the replacement cost of building materials or installation.

Based upon the Credit Agreement and argument of 84 Lumber, the trial court dismissed SBP's complaint. It did so with prejudice, not providing SBP the ability to amend. After the trial court denied SBP's motion for rehearing, this appeal was filed.

3

## Analysis

A motion to dismiss presents an issue of law that is reviewed de novo. *Robert J. Hanopole, D.C., P.A. v. State Farm Mut. Auto. Ins. Co.*, 345 So. 3d 303, 306 (Fla. 4th DCA 2022).

## Reliance on Document Not Attached to Complaint

SBP contends that the trial court erred in dismissing its breach of implied contract claim, because SBP had pled the essential elements of the claim by stating that a contract existed between the parties based upon the subcontract proposal, the invoices sent by 84 Lumber to SBP, and the conduct of 84 Lumber in performing based upon those documents. SBP argues that the court went outside the four corners of the pleading when it relied on the language of the Credit Agreement which was not attached to the complaint.

Generally, "[t]o rule on a motion to dismiss, a court's gaze is limited to the four corners of the complaint, including the attachments incorporated in it, and all well pleaded allegations are taken as true." *U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc.*, 861 So. 2d 74, 76 (Fla. 4th DCA 2003) (quoting *Alevizos v. John D. & Catherine T. MacArthur Found.*, 764 So. 2d 8, 9 (Fla. 4th DCA 1999)). However, "where the terms of a legal document are impliedly incorporated by reference into the complaint, the trial court may consider the contents of the document in ruling on a motion to dismiss." *One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015); *see also Veal v. Voyager Prop. & Cas. Ins. Co.*, 51 So. 3d 1246, 1249 (Fla. 2d DCA 2011) (rejecting argument that the trial court erred by considering the contents of a settlement agreement that was attached to the motion to dismiss when the agreement served as basis for standing to bring suit, and the complaint impliedly incorporated the terms of the agreement by reference"); Fla. R. Civ. P. 1.130(b).

In *One Call*, we found that the trial court did not err in considering the contents of the insurance policy filed with the insurer's motion to dismiss, because the complaint referred to the policy upon which the plaintiff's standing depended. *Id.* at 752. Thus, the complaint incorporated the policy by reference, and the trial court could rely on the policy in ruling on the motion. *Id.*; *Cf. Landmark Funding, Inc. on Behalf of Naples Syndications, LLC v. Chaluts*, 213 So. 3d 1078, 1080 (Fla. 2d DCA 2017) (determining that the trial court erred by considering records from proceedings, where only one of the proceedings was mentioned in the derivative complaint, and neither the plaintiff's "standing nor the merits of its claims as pleaded" were "in any way based or dependent upon the

4

records from [the entire proceedings]" and it was "premature" to resolve the issues on the motions to dismiss). Because SBP's complaint referred to the Credit Agreement as part of the contract between the parties, the trial court did not err in considering the Credit Agreement.

## Contract Implied in Fact Count

However, the trial court erred in dismissing the complaint because of the Credit Agreement, which did not negate SBP's breach of implied contract claim. As SBP argued, the Credit Agreement had "nothing to do" with SBP's claims. While the Credit Agreement stated that its terms superseded terms in any other contracts or purchase orders and stated that only documents signed by 84 Lumber would be binding on 84 Lumber, the agreement did not negate a contract implied in fact based upon other documents and conduct of the parties.

We explained a contract implied in fact in *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc.*, 695 So. 2d 383 (Fla. 4th DCA 1997):

> A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words. 17 Am. Jur. 2d "*Contracts*" § 3 (1964); 1 Arthur Linton Corbin, *Corbin on Contracts* §§ 1.18–1.20 (Joseph M. Perillo ed. 1993). Where an agreement is arrived at by words, oral or written, the contract is said to be "express." 17 Am. Jur. 2d "*Contracts*" at § 3. A contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement. *Id.*; 3 *Corbin on Contracts* § 562 (1960). It is to this process of defining an enforceable agreement that Florida courts have referred when they have indicated that contracts implied in fact "rest upon the assent of the parties." *Policastro v. Myers*, 420 So. 2d 324, 326 (Fla. 4th DCA 1982); *Tipper v. Great Lakes Chemical Co.*, 281 So. 2d 10, 13 (Fla. 1973). The supreme court described the mechanics of this process in *Bromer v. Florida Power & Light Co.*, 45 So. 2d 658, 660 (Fla. 1950):
>
> > [A] [c]ourt should determine and give to the alleged implied contract "the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the situation

5

> which has arisen, they had contracted expressly thereto."  12 Am. Jur. 766.

*Id.* at 385–86 (alteration in original).

Applying these principles to this case, the complaint alleged that the contract consisted of verbal and written negotiations after which SBP executed a "Subcontract Agreement."  SBP attached documents in support of the allegations; 84 Lumber's purchase proposal (an offer); SBP's "acceptance" through its subcontract; and invoices rendered by 84 Lumber for the products and services rendered.  SBP also alleged that the parties performed under this contract implied in fact, when 84 Lumber furnished and installed the doors and windows for which it was paid compensation.  SBP thereby also alleged reliance on the parties' conduct.  These allegations were sufficient to support SBP's theory of breach of a contract implied in fact.

84 Lumber argues the Credit Agreement is the only express agreement between the parties, and that it negates any contract implied in fact based on the general proposition that "a plaintiff cannot pursue an implied contract theory . . . if an express contract exists."  *F.H. Paschen, S.N. Nielsen & Assocs. LLC v. B&B Site Dev., Inc.*, 311 So. 3d 39, 49 (Fla. 4th DCA 2021).  We find that the exception to that rule applies in this case.  "Reliance upon a theory of implied contract is barred only if an express contract concerns the same subject matter as the implied contract."  *Id.* Further:

> The proposition that "the law will not imply a contract where a valid express contract exists" has been described by Professor Corbin as "misleading."  *S. Bell Tel. & Tel. Co. v. Acme Elec. Contractors, Inc.*, 418 So. 2d 1187, 1189 (Fla. 4th DCA 1982).  The real meaning of this statement is the following:
>
>> [W]here the parties have made an express contract, the court should not find a different one by "implication" concerning the same subject matter if the evidence does not justify an inference that they intended to make one . . . .  [T]he fact that an express contract has been made does not prevent the parties from making another one tacitly, concerning the same subject matter or a different one.

6

*Id.* (quoting 3 A. L. Corbin, Corbin on Contracts § 564 (1960 ed.)).

*Id.* (alteration in original).

As SBP argued, the Credit Agreement did not involve the specific undertaking in this case. The proposal submitted by 84 Lumber applied specifically to the SBP project upon which the complaint was based. The proposal provided a signature line for acceptance of the proposal, which the SBP representative signed. 84 Lumber made a definite proposal to furnish and install windows and doors for SBP on the construction of the homeowners' residence. 84 Lumber performed and was paid, as alleged in the complaint. From the documents, as well as the conduct of the 84 Lumber in supplying and installing the doors and windows, it can be inferred that a contract implied in fact existed. And it is for the trial court to give effect to the contract. *See Bromer*, 45 So. 2d at 660. Thus, SBP's complaint alleged a different agreement than the Credit Agreement.

Moreover, the Credit Agreement itself does not negate a contract implied in fact for the installation of the windows and doors on this particular construction project. In fact, the Credit Agreement assumes that other undertakings will occur between the parties. The Credit Agreement only precludes relying on terms in documents not expressly agreed to by 84 Lumber, certain categories of damages, and liability based upon breaches of warranties of merchantability or fitness for a particular purpose. But SBP's complaint does not seek compensation for "liquidated, incidental, punitive or consequential damages," and the Credit Agreement itself contemplates some liability when it provides that "[i]n no event shall 84's liability exceed the replacement cost of building materials or installation." Thus, even considering the Credit Agreement as part of the contract, the agreement does not negate the breach of implied contract count or liability for any damages.

### Negligence Count

Nor does the Credit Agreement negate SBP's alternate theory of negligence. *See Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 494 (Fla. 4th DCA 2001) ("[a]sserting inconsistent allegations in a complaint is permissible"); *Belz Investco Ltd. P'ship v. Groupo Immobiliano Cababie, S.A.*, 721 So. 2d 787, 788 (Fla. 3d DCA 1998) (the rules of procedure permit a plaintiff to state causes of action in the alternative "even where the alternative allegations are completely inconsistent with one another"). SBP contends that if the parties were not in privity and/or

7

the duties undertaken by 84 Lumber were independent of a contract, then the negligence claim was viable.

A negligence claim has four elements: "(1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff." *Bartsch v. Costello*, 170 So. 3d 83, 86 (Fla. 4th DCA 2015) (citing *Clay Elec. Co–Op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)).

SBP alleged that 84 Lumber was "under a duty to ensure the materials and work were compliant with the manufacturers' recommendations, the approved plans and specifications and proper construction practices." SBP then alleged that "[s]pecifically, Third-Party Defendant, 84 LUMBER'S the scope of work is defined by the Subcontract Agreement[] attached hereto as Exhibit 'F.'" SBP next alleged that 84 Lumber breached its duty "by supplying, installing, inspecting, or approving both defective" materials "and/or providing labor for the installation" of the materials that was "not in accordance with applicable building codes, manufacturers' recommendations, approved plans and specifications or proper construction practices." And SBP alleged that it was damaged as a direct and proximate cause of 84 Lumber's breach. Thus, SBP alleged all the elements of a negligence claim.

84 Lumber contends that the independent tort doctrine precludes the negligence claim because the claim was related to and dependent upon breach of contractual duties. "As a general principle of law, 'a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract.'" *Un2jc Air 1, LLC v. Whittington*, 324 So. 3d 1, 3 (Fla. 4th DCA 2021) (quoting *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020)). This principle applies to parties to the contract and is "rooted in the notion that, when a contract is breached, the parameters of a plaintiff's claim are defined by contract law, rather than by tort law." *Id.* (quoting *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017)). Here, SBP alternatively alleged duties separate from the parties' contract implied in fact, the terms of which have not yet been settled. Accepting all well-pleaded allegations as true, SBP's operative pleading was sufficient, and the trial court improperly dismissed the negligence claim.

We affirm as to the dismissal of the contractual indemnity count which specifically relied upon the unsigned subcontract terms. Because the Credit Agreement precluded reliance on terms in documents not signed by its officers, the contractual indemnity count is barred.

## Conclusion

The trial court relied on the terms of a Credit Agreement not attached to the complaint in granting 84 Lumber's motion to dismiss. While we agree the trial court could review the Credit Agreement referred to in the complaint, we conclude the Credit Agreement's terms did not negate the counts for contract implied in fact and negligence. We also find that the trial court did not err in dismissing the contractual indemnity count based on the Credit Agreement. We therefore affirm as to that count but reverse as to the other two counts.

*Affirmed in part; reversed in part and remanded for further proceedings.*

CIKLIN and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***