COHEN, J.
Appellant, Darrel Bilbrey (“Bilbrey”), appeals from an order dismissing with prejudice his complaint against David Myers (“Myers”) and First Pentecostal Church of South Brevard, Inc. (“FPC”), on the grounds that the trial court lacked subject-matter jurisdiction and the complaint failed to state a cause of action. We affirm in part and reverse in part.
Bilbrey, a former member of the church at which Myers serves as pastor, filed an amended eomplaint asserting against Myers and FPC defamation, breach of fiduciary duty, intentional infliction of emotional distress, and invasion of privacy. The amended complaint alleged the following operative facts. Bilbrey became a member of FPC in May 2007 after moving to Florida. He and Myers developed both a business and personal relationship outside the church, where Myers served as Bilbrey’s mentor. Later, Myers sponsored Bilbrey to obtain a license to minister to some degree in the greater Pentecostal church. As their relationship developed, Bilbrey confided in Myers that he had been called a “faggot” as a teenager by an authority figure. This ultimately led to Bilbrey’s installation of a religious internet filtration and accountability system on his personal computer that reports suspect internet usage, or attempted usage, to third parties. Myers served as Bilbrey’s “accountability partner” under the system, and one report prompted Myers to ask Bil-brey if he was “gay.” Bilbrey denied that he was a homosexual. At some point thereafter, the relationship between the two men deteriorated.
According to the complaint, on several occasions Myers falsely accused Bilbrey of being a homosexual and asserted that Bil-brey’s upcoming marriage was a sham designed to conceal his homosexuality. These allegations were published to members of Bilbrey’s church, including his fian-cée’s father. Later, Myers urged Bilbrey to call off his upcoming marriage and move out of state, which Bilbrey did. After the move, when Bilbrey attempted to transfer his pastor’s license from Florida to Michigan, Myers falsely reported to church officials that Bilbrey was a homosexual. Myers also called Bilbrey’s new pastor to repeat the same accusation.
In response to Bilbrey’s amended complaint, Myers and FPC filed a motion to dismiss all claims, arguing that the trial court lacked subject-matter jurisdiction over Bilbrey’s claims due to the church autonomy doctrine. The trial court agreed and granted the motion with prejudice on the basis of the doctrine. It further found the complaint failed to state a claim for intentional infliction of emotional distress.
*890 Bilbrey appealed the dismissal of his claims. The order of dismissal is reviewable de novo, based on the allegations contained in the four corners of the complaint. Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 494 (Fla. 4th DCA 2001). For purposes of reviewing a motion to dismiss, the “allegations of the complaint are assumed to be true and all reasonable inferences arising therefrom are allowed in favor of the plaintiff.” Ralph v. City of Daytona Beach, 471 So.2d 1, 2 (Fla.1983). The purpose of a motion to dismiss is to test the legal sufficiency of a complaint, not determine factual issues. Fla. Bar v. Greene, 926 So.2d 1195, 1199 (Fla.2006). “Unlike a motion for summary judgment, the trial court may not rely on facts adduced in depositions, affidavits, or other proofs.” Chodorow v. Porto Vita, Ltd., 954 So.2d 1240, 1242 (Fla. 3d DCA 2007); but see Mancher v. Seminole Tribe of Fla., Inc., 708 So.2d 327, 328 (Fla. 4th DCA 1998) (discussing limited circumstances where court may consider attached affidavit to motion to dismiss, including determination of subject-matter jurisdiction).
Our review of the complaint requires us to reverse the dismissal of Bil-brey’s claims for defamation and breach of fiduciary duty, which the lower court dismissed on the basis of the church autonomy doctrine. The church autonomy doctrine stems from the First Amendment to the United States Constitution which provides, “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof....” U.S. Const, amend. I; Malicki v. Doe, 814 So.2d 347, 353 (Fla.2002). The doctrine, known also as the “religious autonomy principle,” Malicki, 814 So.2d at 355 n. 6, and the “ecclesiastical abstention doctrine,” Archdiocese of Miami, Inc. v. Minagorri, 954 So.2d 640, 641 (Fla. 3d DCA 2007), is a product of both the Free Exercise Clause and the Establishment Clause,[1] which gives a special, protected status to religious disputes by shielding them from intervention by the courts. The doctrine prevents courts from “resolving internal church disputes that would require adjudication of questions of religious doctrine.” Malicki, 814 So.2d at 355 (citing Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 708-09, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976)). Intrachurch disputes typically concern “ ‘discipline, faith, internal organization, or ecclesiastical rule, custom or law.’ ” Malicki 814 So.2d at 357 (quoting Bell v. Presbyterian Church, 126 F.3d 328, 331 (4th Cir.1997)).
Courts nationwide typically agree that once the church autonomy doctrine is triggered, a civil court is precluded from further adjudicating the issue in question. See Scott C. Idleman, Tort Liability, Religious Entities, and the Decline of Constitutional Protection, 75 Ind. L.J. 219, 225 (2000). Courts disagree, however, as to *891 the prohibition’s precise legal operation. See C.L. Westbrook, Jr. v. Penley, 231 S.W.3d 389, 394 n. 3 (Tex.2007) (“A few courts conceptualize the general prohibition as a question of justiciability. Some treat the matter as an affirmative defense to liability. But the majority of courts broadly conceptualize the prohibition as a subject-matter bar to jurisdiction.”) (citations omitted). To date, Florida courts have treated the prohibition as a bar to subject-matter jurisdiction. See, e.g., Mi-nagorri, 954 So.2d at 641. We agree that the issue is best treated as a matter of subject-matter jurisdiction, which is also reviewed de novo. Jacobsen v. Ross Stores, 882 So.2d 431, 432 (Fla. 1st DCA 2004).
The United States Supreme Court has not yet resolved the effect of the church autonomy doctrine on tort claims. Two distinct viewpoints have evolved with respect to the doctrine in the context of such claims. See Malicki, 814 So.2d at 357-59 (discussing split of authority among states on issue of whether church autonomy doctrine bars tort claim against a religious institution). Some state and federal courts have taken an expansive view of the protections afforded by the .doctrine and refuse to adjudicate most tort claims against religious institutions, finding such claims barred because the conduct giving rise to the claim is inextricably entangled with church polity and administration. See, e.g., Ind. Area Found, of United Methodist Church, Inc. v. Snyder, 953 N.E.2d 1174 (Ind.Ct.App.2011). Most courts, however, have adopted a narrower view of the doctrine and hold that the rights guaranteed by the First Amendment are not violated if the tort claims can be resolved through the application of “neutral principles” of tort law, particularly where there is no allegation that the conduct in question was part of a sincerely held religious belief or practice. Malicki, 814 So.2d at 358; see, e.g., Gibson v. Brewer, 952 S.W.2d 239, 246 (Mo.1997).
Florida has adopted the “neutral principles” approach. In Malicki, the supreme court considered a dispute involving two parishioners (identified as “third parties”) who alleged they had been sexually assaulted and battered by a member of the clergy. 814 So.2d at 352-53. The Malicki court held that the right to religious freedom and autonomy protected by the First Amendment was not violated by a tort claim of negligent hiring and supervision brought against the church, which could be resolved by the neutral application of principles of tort law. Id. at 361. The court found that the Free Exercise Clause was not implicated because there was no claim that the conduct in question had been “undertaken in furtherance of a sincerely held religious belief,” and no claim that the church had failed to exercise control over its clergyman because of sincerely held religious beliefs or practices. Id. at 360-61. It further found that the claim was not barred by the Establishment Clause because the imposition of tort liability in these circumstances had a secular purpose and neither advanced nor inhibited religion. Id. at 364.
The principles established in Mal-icki require reversal of the dismissal of Bilbrey’s claims for defamation and breach of fiduciary duty. Bilbrey’s defamation claims were based on a series of statements made by Myers, who expressly or implicitly inferred that Bilbrey was a homosexual and asserted that Bilbrey’s upcoming marriage was a sham to hide his homosexuality. These statements were made during a meeting in Myers’ office, to which Myers called Bilbrey and three others; in a sermon two weeks after the meeting; when Bilbrey sought to have his ministerial license under the greater *892 Pentecostal church transferred from Florida to Michigan; and when Myers called Bilbrey’s pastor in Michigan. The First Amendment does not grant Myers, as pastor of FPC, carte blanche to defame church members and ex-members. If untrue, the statement that a person is a homosexual has long been recognized as potentially defamatory outside the context of any religious doctrine or practice. This claim can be adjudicated without implicating the First Amendment and was improperly dismissed on the basis of the church autonomy doctrine. Cf. House of God Which is the Church of the Living God, the Pillar & Ground of the Truth Without Controversy, Inc. v. White, 792 So.2d 491, 495 (Fla. 4th DCA 2001) (recognizing claim for defamation against pastor who allegedly called plaintiff a “slut” while standing at church altar in front of other clergy and parishioners).
As to Bilbrey’s claim for breach of fiduciary duty—based on allegations that Myers had a fiduciary duty to Bilbrey because of the pastor/church member relationship and the internet filtration and accountability program—the First Amendment does not necessarily bar such claims. See Doe v. Evans, 814 So.2d 370, 377 (Fla. 2002) (determining First Amendment did not bar examination of fiduciary duty claim against reverend and church, arising from counselor-counselee relationship). In fact, many courts have recognized the existence of a fiduciary duty between a pastor and a parishioner. See, e.g., Destefano v. Grabnan, 763 P.2d 275, 289 (Colo.1988); F.G. v. MacDonell, 150 N. J. 550, 696 A.2d 697, 701 (N.J.1997); but see Redwing v. Catholic Bishop for the Diocese of Memphis, 363 S.W.3d 436, 2012 WL 604481, *14 (Tenn. Feb.27, 2012) (cautioning that, because breach of fiduciary duty claims against religious institution cannot be predicated on religious duty or arise solely from relationship between institution and member, such claims are “quite rare”). It cannot be determined from the pleading, however, whether Bilbrey asserted an actionable fiduciary duty claim. Accordingly, he should have the opportunity to amend the complaint.
We affirm the dismissal of Bil-brey’s claim for intentional infliction of emotional distress based on allegations that over an almost-two-year-period, Myers repeatedly and falsely told various people that Bilbrey was a homosexual with an immoral character, and tried to break up his relationship with his fiancée. The conduct alleged in the complaint, while deplorable, does not rise to the level of outrageousness required by law. Cf. Le-Grande v. Emmanuel, 889 So.2d 991, 995 (Fla. 3d DCA 2004) (holding conduct by church members in front of congregation, including accusation that pastor stole cash and reference to him as “Satan,” was not outrageous).
We also affirm the dismissal of Bilbrey’s claim for invasion of privacy based on the public disclosure of private facts. The complaint’s allegations did not establish enough publicity to make Myers’ conduct actionable for public disclosure of private facts. See Williams v. City of Minneola, 575 So.2d 683, 689 (Fla. 5th DCA 1991) (“[T]he publicity given to private facts must be to the public at large or to so many persons that the matter must be regarded as substantially certain to become public knowledge.”) (citing Restatement (Second) of Torts § 652D, cmt. a (1977)).
AFFIRMED IN PART, REVERSED IN PART, REMANDED.
MONACO and JACOBUS, JJ, concur.

. The First Amendment, applicable to the states through the Fourteenth Amendment, contains two clauses concerning religion: the Free Exercise Clause and the Establishment Clause. Malicki, 814 So.2d at 353. The Free Exercise Clause guarantees "the right to believe and profess whatever religious doctrine one desires.” Id. at 354 (quoting Emp't Div. v. Smith, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)). The freedom to believe is absolute, but the freedom to act is not. Malicki, 814 So.2d at 354 (citing Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)). The Establishment Clause involves the separation of church and state and prevents the government from passing laws that "aid one religion, aid all religions, or prefer one religion over the other.” Malicki, 814 So.2d at 354-55 (quoting School Dist. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963)). These interests are also expressed in article I, section 3 of the Florida Constitution.