ORFINGER, C.J.
Donna R. Wendler, Scott Wendler, and Wendler Properties III, Inc. (collectively, “the Wendlers”), brought this action against the City of St. Augustine under the Bert J. Harris, Jr., Private Property Rights Protection Act, section 70.001, Florida Statutes (2010) (“Harris Act”).[1] The trial court found the action was untimely and dismissed the complaint with prejudice. We reverse.
Between 1998 and 2006, the Wendlers purchased eight parcels of real property in St. Augustine, Florida (the “Wendler Property”). The Wendler Property contains seven structures built between 1910 and 1930, and is located in a National Register of Historic Places District. When purchasing the property, the Wen-dlers knew that the parcels were subject to city ordinance, section 28-89, City of St. Augustine Municipal Code (“the Ordinance”), which regulates the demolition or relocation of certain historic structures. In 2002, the City revised the Ordinance by expanding the list of regulated structures to include homes at least 50 years old. The amendment also extended the waiting period for a demolition permit from six months to one year. In 2005, the City again amended the Ordinance, authorizing the City’s Historic Architectural Review Board (“HARB”) to deny demolition or relocation requests indefinitely for three types of structures, including those considered “contributing property to a National Register of Historic Places District.”
The Wendlers used the structures on their property as residential rentals, but based on their view of changing market conditions, decided to convert the properties to a commercial use.[2] To that end, on *1143 September 28, 2007, the Wendlers submitted applications to demolish the seven structures pursuant to the Ordinance and to rezone all eight parcels to allow for a commercial use. On December 5, 2007, HARB denied all seven demolition permit requests, finding that six of the seven structures were contributing historic structures to the National Register Historic Places District, that the removal of the structures would be detrimental to the historic and architectural character of the City, and that the Wendlers had not proven undue economic hardship or adequate justification for the demolition, as required by the Ordinance. The Wendlers timely appealed the denial orders to the City Commission. After a hearing, the City Commission entered its order affirming HARB’s orders and denying the Wendlers’ rezoning application. The Wendlers challenged the City’s denial by filing a timely petition for a writ of certiorari and a complaint for declaratory and injunctive relief, but voluntarily dismissed the action on April 5, 2010.
The following month, the Wendlers submitted a Harris Act claim to the City. The Harris Act allows property owners to be compensated by a governmental entity if a government regulation inordinately burdens an existing or vested property right. § 70.001, Fla. Stat. (2010). On October 26, 2010, the City responded with its written offer of settlement and a ripeness decision. The Wendlers rejected that offer, and instead, on July 14, 2011, filed their action in the circuit court under the Harris Act. Relying on our decision in Citrus County v. Halls River Development, Inc., 8 So.3d 418 (Fla. 5th DCA 2009), the trial court found the Wendlers’ complaint was untimely and dismissed their case with prejudice. The Court reasoned that the impact of the 2005 amendment to the Ordinance was readily ascertainable to owners of structures within the scope of the Ordinance, including the Wendlers. As a result, the court determined that the Wen-dlers had one year from the date of the enactment of the 2005 amendment to the Ordinance to file their Harris Act claim against the City, which they did not do. This appeal followed.
We review de novo a trial court’s order dismissing a complaint with prejudice. GLK, L.P. v. Four Seasons Hotel Ltd., 22 So.3d 635, 636 (Fla. 3d DCA 2009); Extraordinary Title Servs., LLC v. Fla. Power & Light Co., 1 So.3d 400, 402 (Fla. 3d DCA 2009); see Airey v. WalMart/Sedgwick, 24 So.3d 1264, 1265 (Fla. 1st DCA 2009) (reiterating that where pertinent facts are undisputed, issue is one purely of law, subject to de novo review).[3]
*1144 The Harris Act, enacted in 1995, created a new cause of action allowing property owners who suffer inordinate regulatory burdens to existing or reasonably foreseeable land uses to be compensated by the governmental entity creating the burden. § 70.001(1), (2), (5)(a), Fla. Stat. (2010). The law focuses on protecting real property owners’ rights to existing uses and vested rights to specific uses of their property. Halls River, 8 So.3d at 419. The terms “inordinate burden” or “inordinately burdened” are defined in the Harris Act to mean a specific action by a governmental entity that directly restricts or limits the use of real property. Id. at 421.
A Harris Act claim must be presented within one year from the time the law or regulation is first applied by the governmental entity to the subject property. § 70.001(11), Fla. Stat. (2010) (emphasis added). At least 180 days prior to filing a lawsuit, the owner must submit a presuit notice to the appropriate governmental entity. § 70.001(4)(a), Fla. Stat. (2010). Following receipt of the presuit notice, the government has 180 days to consider its options, which include retracting or modifying its action, taking no action, or granting relief in a variety of ways and making an offer to settle. § 70.001(4)(c), Fla. Stat. (2010). Before this 180-day period expires, unless a settlement offer is accepted by the property owner, the governmental entity is required to issue a written “ripeness” decision, identifying the allowable uses for the property. § 70.001(4)(a), (5)(a), Fla. Stat. (2010). “The ripeness decision, as a matter of law, constitutes the last prerequisite to judicial review, and the matter shall be deemed ripe or final for the purposes of the judicial proceeding created by this section, notwithstanding the availability of other administrative remedies.” § 70.001(5)(a), Fla. Stat. (2010); Halls River, 8 So.3d at 420. After receiving the ripeness decision, the property owner may file an action for damages. § 70.001(5)(b), Fla. Stat. (2010). Failure to comply with these procedural requirements will result in a dismissal of the lawsuit. See Sosa v. City of West Palm Beach, 762 So.2d 981 (Fla. 4th DCA 2000) (holding that complaint must be dismissed where property owner failed to comply with prerequisites for bringing suit under Harris Act). Provided that the procedural requirements of the Harris Act are satisfied, the court then determines whether an existing or vested use exists and whether the regulation has “inordinately burdened” the real property. If the court so finds, a jury determines the amount of damages suffered by the property owner. § 70.001(6), Fla. Stat. (2010). The question we must answer is when did the clock begin to run on the Wendlers’ ability to file the Harris Act claim with the City and the action with the court.
In Halls River, a property owner was advised by Citrus County staff that a condominium project could be developed on *1145 the owner’s land, even though the project was inconsistent with the county’s comprehensive plan which limited the property to one housing unit per twenty acres of land. When the county ultimately rejected the project, the owner brought a Harris Act action against the county in court. The county contended that the suit was untimely. 8 So.3d at 415-19. The owner argued that since the Harris Act only allows as-applied challenges, the mere enactment of a statute, ordinance or plan of general application, could not trigger the accrual of a Harris Act claim. The owner contended that until a development plan was submitted and rejected, the impact of the governmental regulation could not be determined. Id. at 422.
In that case, we agreed that there are some instances when the impact of a governmental regulation cannot be determined prior to the submission of an actual development plan. For example, the impact of a generally applicable development standard discouraging urban sprawl may not be readily apparent. On the other hand, we observed that if a comprehensive plan was a clear height or density limitation, the impact on a given parcel of property can immediately be determined. Id. at 422-23. Consequently, we held that if the impact of a new law or regulation is “readily ascertainable” to the property owner, a claim must be made against the local government within one year of that new regulation’s enactment in order to preserve the right to timely file an action in court founded in the Harris Act. Id. at 423.[4]
Applying the holding of Halls River here, we conclude the impact of the 2005 amendment to the Ordinance was not readily ascertainable to the Wendlers in 2005. The Ordinance, as amended, put property owners on notice of the procedure they must follow when applying for a permit for demolition or relocation of any of the three building types newly designated in the amendment and sets forth the general standards for the demolition or relocation of historic structures. However, these provisions constituted only general restrictions that applied to the Wen-dlers’ structures, just as they potentially applied to other structures in the historic district. Given the significant discretion retained by the City to grant or deny a demolition or relocation request, the impact of the Ordinance, as amended, was not reasonably ascertainable to property owners, including the Wendlers at the time of enactment. The Ordinance was a generally applicable development standard, not an objective, readily determined standard as was present in Hall’s River. As such, we conclude that the impact .of the Ordinance was not readily ascertainable until the Wendlers’ demolition applications were denied on December 5, 2007.
Still a question remains regarding the timeliness of the complaint filed on July 14, 2011. Section 70.001(11), Florida Statutes (2010), provides:
A came of action may not be commenced under this section if the claim is presented more than 1 year after a law or regulation is first applied by the governmental entity to the property at issue. If an oumer seeks relief from the governmental action through lawfully available administrative or judicial proceedings, the time for bringing an action under this section is tolled until the conclusion of such proceedings.
*1146 (emphasis added). The Wendlers argue that tolling under the Harris Act applies to the presentation of a claim "with the City, and not to the filing of the cause of action in court. In contrast, the City interprets section 70.001(11) as providing an affected property owner the option of filing a claim with the appropriate government entity within one year of the permit denial or choosing to litigate the permit denial issue, thereby, foregoing the “claim” route, and then subsequently filing a Harris Act cause of action within one year after that litigation is concluded.
In Halls River, we held that filing a claim with the appropriate government entity within the one-year period was a pre-suit condition to filing a lawsuit. We did not address the applicable limitation period for filing a lawsuit under the statute. In Russo Associates, Inc. v. City of Dania Beach Code Enforcement Board, 920 So.2d 716 (Fla. 4th DCA 2006), the Fourth District Court addressed that issue, holding that the statute of limitations to file suit under the Harris Act is four years, and begins from the date of the government action, which acts as the ordinate burden.
We agree with the analysis in Russo. Consequently, under section 95.11(3)(f), Florida Statutes (2010), the Wendlers had four years (plus any tolling time) to file their complaint under the Harris Act. HARB denied the Wendlers’ demolition permits on December 5, 2007, first applying the Ordinance to the Wendler Property. The Wendlers timely presented their Harris Act claim to the City on May 11, 2010. Given the tolling provision found in section 70.001(11), only six months had elapsed (five months between the time of the citation and the first challenge in circuit court on May 23, 2008, and one month between their voluntary dismissal of the petition for writ of certiorari (April 5, 2010), and the presentation of the claim to the City), when the Wendlers filed their Harris Act claim. The Wendlers then timely filed their Harris Act action on July 14, 2011, well before the four-year period ended.[5] See Russo, 920 So.2d at 718.
Because the Wendlers’ Harris Act claim and action were timely filed, we reverse the final judgment dismissing their suit and remand for further proceedings.
REVERSED AND REMANDED.
SAWAYA and COHEN, JJ., concur.

. The Legislature substantially amended section 70.001, effective July 1, 2011. See ch. 2011-191, §§ 1 & 3, Laws of Fla. The amendments "apply prospectively only and do not apply to any claim or action filed under s. 70.001, Florida Statutes, which is pending on the effective date of this act (July 1, 2011).” Ch. 2011-191, § 2, Laws of Fla.

. The Wendlers hoped to rezone the property to a Planned Unit Development ("PUD”), allowing for an 80-room boutique hotel with a restaurant, an art gallery, and an underground garage for parking. If unable to obtain a PUD zoning, the Wendlers proposed a multiple building cluster, comprising of an integrated 50-room hotel with a restaurant *1143 and bed-and-breakfast/guest homes, consistent with the parcels’ present zoning.

. Citing Munnerlyn v. Wingster, 825 So.2d 481 (Fla. 5th DCA 2002), the City argues that this Court should apply an abuse of discretion standard of review because the court found that it lacked subject matter jurisdiction to consider the Harris Act lawsuit. In Munner-lyn, this Court indicated that "[a] trial court's determination of subject matter jurisdiction is subject to an abuse of discretion standard of review." 825 So.2d at 482 (citing Birnbaum v. Birnbaum, 615 So.2d 241, 242 (Fla. 3d DCA 1993) ("[Tjhe trial court did not abuse its discretion or authority in concluding it was vested with subject matter jurisdiction to proceed on the issue of custody.”)). Both Munnerlyn and Bimbaum involved jurisdictional issues arising under the Uniform Child Custody Jurisdiction Act (UCCJA). Specifically, the appellate courts were asked to review factual determinations made by the trial courts concerning a child’s home state for the purpose of UCCJA litigation.
In Bilbrey v. Myers, 91 So.3d 887, 891 (Fla. 5th DCA 2012), this Court reiterated the rule that matters regarding subject matter jurisdiction are generally reviewed de novo. A court’s subject matter jurisdiction, or its power to hear a controversy, is generally tested by the good-faith allegations in the complaint *1144 and is not dependent upon the ultimate disposition of the lawsuit. Calhoun v. N.H. Ins. Co., 354 So.2d 882, 883 (Fla.1978). Consequently, because the question of whether a court has jurisdiction to hear a case generally involves a question of law, our review is de novo. See Metro-Dade Invs., Co. v. Granada Lakes Villas Condo., Inc., 74 So.3d 593, 594 (Fla. 2d DCA 2011); Sanchez v. Fernandez, 915 So.2d 192, 192 (Fla. 4th DCA 2005); Jacobsen v. Ross Stores, 882 So.2d 431, 432 (Fla. 1st DCA 2004); Seven Hills, Inc. v. Bentley, 848 So.2d 345 (Fla. 1st DCA 2003); see also Gonzalez-Oropeza v. U.S. Atty. Gen., 321 F.3d 1331, 1332 (11th Cir.2003) (stating that subject matter jurisdiction is reviewed de novo); Hebert v. United States, 53 F.3d 720, 722 (5th Cir.1995) ("We review de novo a district court’s granting of a motion to dismiss for lack of subject matter jurisdiction.”); Sanchez v. Fernandez, 915 So.2d 192, 192 (Fla. 4th DCA 2005) ("Whether a court has subject matter jurisdiction is a question of law reviewed de novo.”).

. But see M & H Profit, Inc. v. City of Panama City, 28 So.3d 71, 76 (Fla. 1st DCA 2009) (holding that "until an actual development plan is submitted, a court cannot determine whether the government action has ‘inordinately burdened' property”).

. But see Turkali v. City of Safety Harbor, 93 So.3d 493, 494 (Fla. 2d DCA 2012) ("The [Harris] Act provides that the action must be filed within one year of the application of the ordinance to the subject property. § 70.001(11).” (emphasis added)).