# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**KARLA GUARINO,**
Appellant,

v.

**EDWARD MANDEL,** an individual, **VIBE MICRO, INC.,**
a Nevada corporation, and **8 SPEED 8, INC.,** a Nevada corporation,
Appellees.

No. 4D20-1708

---

**SNELL AND WILMER, LLP,** a foreign limited liability partnership,
Appellant,

v.

**EDWARD MANDEL,** an individual, **VIBE MICRO, INC.,**
a Nevada corporation, and **8 SPEED 8, INC.,** a Nevada corporation,
Appellees.

No. 4D20-1716

[September 15, 2021]

Nonfinal appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Keathan B. Frink, Judge; L.T. Case No. CACE18-4917-12.

Todd M. Kurland of Law Office of Todd M. Kurland, P.A., Palm Beach Gardens, for appellant Karla Guarino.

David R. Atkinson, George S. Lemieux and Lauren V. Purdy of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellant Snell and Wilmer, LLP.

Stephanie Hopple of Hopple Law Firm, LLLP, Miami, for appellees.

FORST, J.

Appellants Karla Guarino and law firm Snell and Wilmer, LLP have filed separate appeals from non-final orders partially denying their respective motions to dismiss appellees' amended complaint for lack of personal jurisdiction. The motions to dismiss were directed to an amended complaint filed by appellees Edward Mandel and Vibe Micro, Inc., individually and as shareholders of 8 Speed 8, Inc. ("8 Speed 8"). The amended complaint asserted that appellants and others committed various torts within this state, thereby subjecting them to jurisdiction pursuant to Florida's long-arm statute, section 48.193, Florida Statutes (2018). We *sua sponte* consolidate these two appeals for disposition.

With respect to Guarino's appeal, we reverse and remand for dismissal of the amended complaint because neither the amended complaint's allegations nor the record's jurisdictional evidence connects Guarino's alleged tortious conduct with Florida to bring her within the ambit of the long arm statute. As to the law firm's appeal, we reverse and remand for an evidentiary hearing concerning certain jurisdictional evidence, and for a "minimum contacts" analysis should the trial court find jurisdiction under the long-arm statute.

**Background**

Appellees' eight-count amended complaint was directed to ten defendants and asserted various business torts, as well as abuse of process and invasion of privacy claims. Specifically, the amended complaint alleged the following causes of action: breach of fiduciary duty in furtherance of civil conspiracy (counts I and II); misappropriation of trade secrets in furtherance of civil conspiracy (count III); conversion/usurpation of corporate opportunities in furtherance of civil conspiracy (count IV); abuse of process in furtherance of civil conspiracy (count V); aiding and abetting breach of fiduciary duty in furtherance of civil conspiracy (count VI); aiding and abetting breach of fiduciary duty (count VII); and invasion of privacy (count VIII). Counts I, II, III, IV, V, and VIII were brought against all defendants, including the two appellants. Count VI was brought solely against the law firm, and the remaining count (count VII) did not include either appellant.

The amended complaint generally alleged that in November 2012, appellee Mandel, defendant Igor Shabanets, and a non-party—acting through their respective corporations—entered into an agreement to run a kiosk business together, 8 Speed 8.[1] Mandel, Shabanets, and the non-

---

[1] Mandel's respective corporation was appellee Vibe Micro, Inc. 8 Speed 8 was allegedly a Nevada corporation.

party each had an ownership interest in the company, with appellant Karla Guarino, a Colorado resident, serving as the company's CEO.

The amended complaint further alleged that, in October 2013, Shabanets, the non-party, and Guarino "conspired and agreed to use illegal means to force Mandel out of 8 Speed 8." In furtherance of the conspiracy, the purported conspirators later created Rain Kiosk, an entity "identical to 8 Speed 8 . . . but for Mandel's ownership interest," to divert 8 Speed 8's assets and corporate opportunities. Investors interested in 8 Speed 8 were told that Rain Kiosk was the same company and were invited to instead invest in Rain Kiosk.

Subsequently, in March 2014, Rain Kiosk entered into an agreement with Payteller, a competing kiosk company, whereby 8 Speed 8's "assets and business opportunities, including those that had [already] been transferred to Rain Kiosk" would be transferred to Payteller and/or Card Platforms, LLC—two Florida companies. This was allegedly done in order to further remove control of 8 Speed 8 from Mandel. Payteller thereafter hired Guarino, with the latter alleged to have continued to transfer 8 Speed 8's business opportunities to the two Florida companies.

Appellant Snell and Wilmer, an Arizona-based law firm with no offices in Florida, allegedly joined the conspiracy, "propos[ing] an alternate course of action which would allow Guarino, Shabanets, and [NPI] to cash out on their interests in 8 Speed 8 . . . and prevent Mandel from receiving anything." Upon the law firm's advice, the conspirators entered into a new agreement with Payteller, wherein Rain Kiosk was substituted with ISS Management, Inc. ("ISS"), a separate Nevada limited liability company. The conspirators purportedly used ISS to continue to capitalize on 8 Speed 8's business opportunities under a new name.[2] The law firm, in turn, advised the other conspirators and "drafted a series of documents which enabled . . . Russian investors who had originally intended and agreed to invest in 8 Speed 8 . . . to instead invest in ISS, Payteller, and Card Platforms." The amended complaint concludes that this activity's result was that the conspirators received millions of dollars that would otherwise have gone, in part, to appellees.

Beyond the alleged conspiracy to siphon 8 Speed 8's assets and diminish Mandel's influence in the company, appellees further claimed that the law firm engaged in a pattern of conduct designed to harass Mandel. As part of this conduct, appellees asserted that the law firm

---

[2] The amended complaint alleged that Mandel had discovered the conspirators' plan with respect to Rain Kiosk and that he was unaware of ISS's existence.

appeared in several court cases involving Mandel with the intention of rendering him unable to interfere with the alleged conspiracy.

Appellants separately moved to dismiss the amended complaint for lack of personal jurisdiction.

### A. Guarino's Motion to Dismiss

Guarino asserted that appellees failed to adequately allege a conspiracy sufficient to bring her actions within the ambit of Florida's long-arm statute, and that, in any event, she lacked the requisite level of minimum contacts with Florida to establish personal jurisdiction. Guarino filed both an affidavit and supplemental affidavit in support, wherein she asserted that: (1) she had never resided in Florida; (2) she had worked for Payteller only after she had ended her employment as 8 Speed 8's CEO; (3) while working for Payteller, she worked from her home in Colorado; and (4) she had "made 5 trips to Florida for Payteller purposes." Guarino also challenged a number of the amended complaint's factual allegations.

Appellees filed a response in opposition to Guarino's motion to dismiss, asserting that the conspiracy and breach of fiduciary duty occurred in Florida because Guarino helped to divert 8 Speed 8's assets and business opportunities to Payteller and Card Platforms, LLC—two Florida companies.[3] Moreover, appellees asserted that the injury occurred in Florida because "the only [8 Speed 8] shareholder that suffered injury from the misappropriation" was appellee Vibe Micro, Inc., which had its principal place of business in Florida and which had appellee Mandel, a Florida resident, as its principal. According to appellees, "[s]ince this was intentional misconduct that took place in Florida, the conduct was designed to harm a Florida resident, and the conspirators knew that the brunt of actions would be felt in Florida, the tort occurred in Florida." In support of their response, appellees filed Guarino's answers to personal jurisdiction interrogatories, and the affidavits of both Mandel and the non-party individual that helped create 8 Speed 8. Those filings mainly served to support the amended complaint's allegations and contained minimal relevance to jurisdiction.

### B. The Law Firm's Motion to Dismiss

The law firm moved to dismiss all claims brought against it, arguing *inter alia*, that appellees failed to allege a viable conspiracy, failed to

---

[3] The response in opposition solely addressed the alleged conspiracy and breach of fiduciary duty (without specifying if it was in reference to counts I or II).

demonstrate a basis for either specific or general personal jurisdiction in Florida, and that the trial court's exercise of personal jurisdiction over the law firm would violate due process. In support, the law firm filed the affidavits of three of its attorneys involved in court proceedings against appellees, all of which stated that the attorneys were California residents and denied any wrongdoing or role in the alleged conspiracy.

Appellees filed a response in opposition. The response asserted that the law firm had not refuted the jurisdictional allegations of the invasion of privacy and aiding and abetting breach of fiduciary duty claims (counts VIII and VI, respectively), and that the torts were committed in Florida and caused injury there.[4]

To counter the law firm's jurisdictional evidence, appellees filed the affidavits of the non-party and Mandel. As to the law firm's alleged connection with Florida, the non-party stated that the law firm ultimately assisted in the diversion of 8 Speed 8's assets to Payteller and Card Platforms, two Florida companies. Moreover, the non-party stated that the law firm hired a private investigator to investigate Mandel's resources knowing that Mandel lived in Florida, and that the reports were provided to Shabanets, who "owned and used" a Florida residence. Mandel's affidavit provided no Florida connection for the law firm and merely stated that he (Mandel) lived in Florida and had suffered damages there because of the release of financial and personal information.

### C. The Trial Court's Order on Guarino's Motion to Dismiss

The trial court entered an order on Guarino's motion to dismiss. With respect to all claims in furtherance of a civil conspiracy, the trial court first determined that appellees failed to "successfully allege a cause of action for civil conspiracy amongst the defendants to commit a tort." The court therefore "dispensed with any purported claim for civil conspiracy" and turned to an examination of the underlying causes of action. In doing so, the court determined that only counts I and III sufficiently stated causes of action. And, of those two counts, the court determined that it had personal jurisdiction over Guarino solely for count I, breach of fiduciary duty.

---

[4] Appellees did not address the other claims, alleging that "[t]he only Counts which are actually challenged on personal jurisdiction grounds are the invasion of privacy claim and aiding and abetting breach of fiduciary duty claim." Appellees requested that the trial court consider personal jurisdiction as to those claims only and defer on all other issues.

On the breach of fiduciary duty count, the trial court concluded that, although Guarino largely refuted several jurisdictional allegations supporting the cause of action, she failed to refute the amended complaint's paragraph 70(i), which alleged that Guarino improperly transferred large amounts of cash from 8 Speed 8's Wells Fargo bank account to Rain Kiosk without consent. The court found that this action, combined with the amended complaint's additional allegations, vested it with jurisdiction. Accordingly, the court denied Guarino's motion to dismiss as to count I, and granted the motion as to counts II, III, IV, V, and VIII.[5] Guarino then filed a motion for rehearing and/or reconsideration, which the trial court summarily denied.

D. *The Trial Court's Order on the Law Firm's Motion to Dismiss*

The trial court entered an order granting and denying in part the law firm's motion to dismiss. The court first determined that *general* personal jurisdiction was lacking as to all counts against the law firm. The court next examined whether appellees' claims stated a cause of action and whether it had *specific* personal jurisdiction over the law firm.

As noted above, on the furtherance of a civil conspiracy claims (counts I through VI), the trial court determined that appellees failed to "successfully allege a cause of action for civil conspiracy amongst the defendants to commit a tort." The court therefore "dispensed with any purported claim for civil conspiracy" and instead examined the underlying causes of action as to all counts.

The trial court found that only count VIII (invasion of privacy) and count VI (aiding and abetting breach of fiduciary duty) sufficiently stated a cause of action, and that it had specific personal jurisdiction over those two claims based on the failure of the law firm's affidavits to sufficiently refute the jurisdictional allegations. Accordingly, the court denied the law firm's motion to dismiss as to the invasion of privacy and aiding and abetting breach of fiduciary duty claims, but granted the motion to dismiss as to counts I, II, III, IV, and V.[6]

---

[5] The court gave appellees twenty days to amend the complaint. Appellees chose not to do so.

[6] The court gave appellees thirty days to file an amended complaint. On the thirtieth day, the law firm filed its appeal. Appellees did not file a cross-appeal to challenge the dismissal of counts I through VI. Nor do appellees represent that they sought to amend the complaint.

## Analysis

"The standard of review of a nonfinal order on a motion to dismiss for lack of personal jurisdiction . . . is de novo as to the court's legal rulings." *Int'l Univ. of Health Scis. Ltd., Inc. v. Abeles*, 299 So. 3d 405, 408 (Fla. 4th DCA 2020); *see also NHB Advisors, Inc. v. Czyzyk*, 95 So. 3d 444, 447 (Fla. 4th DCA 2012).

Courts employ a two-step analysis to determine whether personal jurisdiction exists over a nonresident defendant. *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). The first step focuses on the plaintiff's complaint, and whether it "alleges sufficient jurisdictional facts to bring the action within the ambit" of Florida's long-arm statute. *Id.* (quoting *Unger v. Publisher Entry Serv., Inc.*, 513 So. 2d 674, 675 (Fla. 5th DCA 1987)); *Abeles*, 299 So. 3d at 407.

Under the second step, assuming the complaint is sufficient, the trial court must consider whether the defendant satisfied "minimum contacts" with Florida such that the exercise of jurisdiction over the defendant complies with due process requirements and does not offend "traditional notions of fair play and substantial justice." *Venetian Salami*, 554 So. 2d at 500, 502 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Astro Aluminum Treating Co. Inc. v. Inter Contal, Inc.*, 296 So. 3d 462, 464 (Fla. 4th DCA 2020). Both parts of this two-step analysis "must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant." *Am. Fin. Trading Corp. v. Bauer*, 828 So. 2d 1071, 1074 (Fla. 4th DCA 2002).

Further, "[s]tanding alone, 'the filing of a motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings.'" *Acquadro v. Bergeron*, 851 So. 2d 665, 671–72 (Fla. 2003) (quoting *Venetian Salami*, 554 So. 2d at 502). To properly contest jurisdiction, a defendant must file supporting affidavits. *Hampton Island Pres., LLC v. Club & Cmty. Corp.*, 998 So. 2d 665, 667 (Fla. 4th DCA 2009). "Once affidavits are submitted, the burden shifts to the plaintiff to establish the basis for jurisdiction through opposing affidavits or other evidence." *Id.* If the plaintiff fails to refute the allegations of the defendant's affidavits or other evidence, the court must grant the defendant's motion to dismiss, "provided that the defendant's affidavit properly contested the basis for long-arm jurisdiction by legally sufficient facts." *Wash. Cap. Corp. v. Milandco, Ltd.*, 695 So. 2d 838, 841 (Fla. 4th DCA 1997).

7

"In most cases, the affidavits can be harmonized, and the court will be in a position to make a decision based upon facts which are essentially undisputed." *Venetian Salami*, 554 So. 2d at 502–03. However, if the affidavits cannot be reconciled, the court must hold a limited evidentiary hearing to determine jurisdiction. *Id.* at 503.

### A. Establishing Specific Jurisdiction under Florida's Long-Arm Statute

A plaintiff can establish either specific or general jurisdiction under Florida's long-arm statute, codified in section 48.193, Florida Statutes (2018). *Yarger v. Convergence Aviation Ltd*, 310 So. 3d 1276, 1279 (Fla. 5th DCA 2021). "Specific jurisdiction requires a showing that 'the alleged activities or actions of the defendant are directly connected to the forum state.'" *Id.* (quoting *Aegis Def. Servs., LLC v. Gilbert*, 222 So. 3d 656, 659 (Fla. 5th DCA 2017)). General jurisdiction, on the other hand, "requires a showing that 'the defendant's connections with the forum state are so substantial that it is unnecessary to establish a relationship between this state and the alleged wrongful actions.'" *Id.* (quoting *Aegis*, 222 So. 3d at 659).

The cases before us concern an assertion of specific jurisdiction under section 48.193(1)(a)2., Florida Statutes (2018). Consequently, appellees needed to have alleged that their claims of (a) breach of fiduciary duty and (b) the torts of (1) invasion of privacy and (2) aiding and abetting a breach of fiduciary duty, were committed in or directed into Florida, and that the causes of action "ar[ose] from" the tortious activity. *See* § 48.193(1)(a)2., Fla. Stat. (2018); *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (physical presence is not required to "commit a tortious act" and personal jurisdiction may lie for a tort *directed* into Florida so long as the cause of action arises from the tortious conduct). Moreover, appellees needed to have adequately alleged a valid cause of action. *See Horowitz v. Laske*, 855 So. 2d 169, 174 (Fla. 5th DCA 2003) ("Where the threshold question of jurisdiction turns on whether a tort is committed in Florida, the court necessarily must review the allegations of the complaint to determine if a cause of action is stated.").

However, as it relates to section 48.193(1)(a)'s "arising from" language referenced in *Wendt*, such language "necessarily focuses analysis not on where a plaintiff ultimately felt damages, but *where a defendant's tortious conduct occurred*." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013) (emphasis added). "[M]ere injury in Florida resulting from a tort committed elsewhere is insufficient to support personal jurisdiction over a nonresident defendant." *Kaminsky v. Hecht*, 272 So.

3d 786, 788 (Fla. 4th DCA 2019) (quoting *Consol. Energy Inc. v. Strumor*, 920 So. 2d 829, 832 (Fla. 4th DCA 2006)); *see also Korman v. Kent,* 821 So. 2d 408, 410–11 (Fla. 4th DCA 2002) (noting that *Wendt* cannot be construed to grant jurisdiction for tortious acts in every situation in which a tort was completed out-of-state but caused injury in Florida).[7] *But see Allerton v. State Dep't of Ins.*, 635 So. 2d 36, 40 (Fla. 1st DCA 1994) (Florida long-arm statute requiring the defendant to have committed a tort within Florida satisfied where the defendant allegedly participated in a scheme to conceal a Florida-based insurer's true financial condition, even though all of the defendant's actions were taken outside of Florida; the alleged result of those actions was an injury sustained within Florida).

## B. *Appellant Guarino's Motion to Dismiss*

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."[8] *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Here, within count I—and paragraph 70 in particular—appellees alleged eleven different ways in which Guarino breached her fiduciary duties. Specifically, under paragraph 70(i), appellees alleged that Guarino breached her fiduciary duties by:

> improperly transferring large amounts of cash from 8 Speed 8's Wells Fargo account to Rain Kiosk without the consent of Vibe Micro in direct violation of Article 16 of the 8 Speed 8 Shareholder Agreement in furtherance of their scheme to get the controlling person of Vibe Micro, or Edward Mandel, out of the picture[.]

The trial court found that "[t]his action alone, in conjunction with the additional allegations in the Complaint are enough to support a cause of action for breach of fiduciary duty." It added that Guarino's failure to refute the "Rain Kiosk" allegation within paragraph 70(i) meant that the burden did not shift back to plaintiffs to demonstrate jurisdiction.

---

[7] *Wendt* held that "telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) [now, section 48.193(1)(a)2.] if the alleged cause of action arises from the communications . . . ." 822 So. 2d at 1260.

[8] We address count I as a breach of fiduciary duty alone, without consideration of civil conspiracy's elements, based upon the trial court's findings and appellees' decision not to amend.

We disagree. Although appellees Mandel and Vibe Micro, Inc. brought count I "individually and derivatively on behalf of 8 Speed 8," the actual allegations within that count were that Guarino had breached her "duty of loyalty, trust and repose . . . *owed to 8 Speed 8*[.]" (emphasis added). Indeed, in the wherefore clause, appellees demanded judgment against Guarino "on behalf and *for the benefit of 8 Speed 8*[.]" (emphasis added).

Nothing within the amended complaint connects Guarino's (a Colorado resident) alleged breaches of her fiduciary duties as to 8 Speed 8 (a Nevada corporation) to Florida. Guarino's alleged breaches were not committed in or directed into the state. *See Wendt*, 822 So. 2d at 1260; *see also Stonepeak Partners, LP v. Tall Tower Cap., LLC*, 231 So. 3d 548, 554 (Fla. 2d DCA 2017) (alleged breach of fiduciary duty did not arise or relate to Florida as the plaintiff did not establish a fiduciary duty owed in Florida or "connexity" between the breach and Florida); *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1330 (S.D. Fla. 2010) (applying Florida law and stating that an individual is subject to Florida's long-arm statute under a breach of fiduciary duty cause of action if that company has a principal place of business or is incorporated in Florida).

Moreover, for purposes of paragraph 70(i), nothing within the amended complaint connects Rain Kiosk to Florida. The fact that appellees ultimately suffered injury in Florida—standing alone—is insufficient to support a finding of personal jurisdiction. *Kaminsky*, 272 So. 3d at 788. Consequently, contrary to the trial court's conclusion, Guarino's jurisdictional affidavit outlining her lack of connection and contacts with Florida was sufficient to meet her burden.

To refute Guarino's affidavit, appellees filed Guarino's answers to jurisdictional interrogatories and the affidavit of the non-party who "confirmed" the "conspiracy" to remove appellee Mandel and to continue the business of 8 Speed 8 without Mandel. The trial court did not discuss these filings given its conclusion that Guarino failed to refute the "Rain Kiosk" allegation. Nonetheless, based upon our review of those filings and appellees' response below, we find no factual dispute in the jurisdictional evidence nor any basis to assert jurisdiction over Guarino arising from any alleged breach of fiduciary duty under count I. In fact, appellees' response in opposition focuses on the alleged injury to appellees Vibe Micro, Inc. and Mandel, *not* the injury to 8 Speed 8. And, as already discussed, count I concerns Guarino's breach of fiduciary duty as to *8 Speed 8*.

Accordingly, we find that the parties' jurisdictional evidence can be harmonized and militates in favor of the outright dismissal of appellees' amended complaint against Guarino. *See Venetian Salami*, 554 So. 2d at

10

502–03. Although the trial court did not specifically address minimum contacts, we need not reach that issue based on our conclusion that appellees did not establish a basis for personal jurisdiction under section 48.193(1)(a)2., Florida Statutes (2018). *See Stonepeak*, 231 So. 3d at 558.

### C. *Appellant Snell and Wilmer, LLP's Motion to Dismiss*

Addressing the law firm's jurisdictional claims, the trial court concluded that both count VIII (invasion of privacy) and count VI (aiding and abetting breach of fiduciary duty) met section 48.193's "connexity" requirement. As set forth below, we disagree as to both claims, concluding that a limited evidentiary hearing is required to determine specific jurisdiction under Florida's long-arm statute (and to conduct a "minimum contacts" analysis, if necessary).

#### i. *Count VIII: Invasion of Privacy*

The amended complaint's Count VIII alleged an invasion of privacy. Pertinent to the instant case, an actionable claim for invasion of privacy implicates "public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (quoting *Agency for Health Care Admin. v. Associated Indus. of Fla., Inc.*, 678 So. 2d 1239, 1252 n.20 (Fla. 1996)). Claims based on this tort generally must be made to "the public at large or to so many persons that the matter is substantially certain to become public knowledge." *Bilbrey v. Myers*, 91 So. 3d 887, 892 (Fla. 5th DCA 2012) (quoting *Williams v. City of Minneola*, 575 So. 2d 683, 689 (Fla. 5th DCA 1991)); *but see State Farm Fire & Cas. Co. v. Compupay, Inc.*, 654 So. 2d 944, 949 (Fla. 3d DCA 1995) ("Claims based on this tort require the allegation and proof of publication to *a* third person of personal matter." (emphasis added)).

Here, Mandel alleged that the law firm retained an investigator to obtain his private information and financial records, and that the law firm developed a plan to search for and acquire judgments against him, both with the express intention of involving him in additional litigation and straining his resources. Mandel further alleged that the investigator drafted detailed reports based on such information, with the law firm transmitting this information to Shabanets in Florida, who then used it to "harass and threaten" Mandel. Mandel maintained that Shabanets and the other co-conspirators were able to use this information "to harass [Mandel] as part of their plan to destroy him personally and financially[.]"

11

Mandel did not claim that the investigator or the law firm were based or located in Florida. Nonetheless, Mandel alleged intentional tortious conduct that occurred or was directed into Florida. Specifically, Mandel contended that the law firm requested the reports on his financial information so that it could "use the information to delay or prevent [him] from enforcing his rights under the 8 Speed 8 Shareholders' Agreement[,]" and alleged that the law firm "planned and hoped" to use this information to "involve him in additional litigation and drain his resources[.]" Mandel then claimed that the law firm provided this information to Shabanets at his Aventura, Florida residence, stating that the law firm "knew or should have known that the financial reports were being used to harm" his financial interests. Thereafter, by stating that Shabanets' many co-conspirators were able to use this information and that Shabanets and the law firm planned to use this information in the court system to obtain judgments against Mandel and his family, appellees alleged a public disclosure of private facts.

Assuming Mandel's allegations were not countered by the affidavits in support of the law firm's motion to dismiss, these allegations could be sufficient to support a finding of personal jurisdiction, as the invasion of privacy claim arose out of the law firm's purported conduct in providing the reports to Shabanets at his Florida residence with the expectation that Shabanets would disclose this information to others. *See Wendt*, 822 So. 2d at 1260; *Stonepeak*, 231 So. 3d at 555 ("Because there was no allegation or evidence that [the tortfeasor's] alleged disclosure of information occurred in Florida or was directed at a person in Florida, the alleged disclosure of information . . . [did] not support [a] finding that [the appellant] committed a tortious act in Florida." (emphasis added)); *Deloitte & Touche v. Gencor Indus., Inc.*, 929 So. 2d 678, 683 (Fla. 5th DCA 2006) (finding personal jurisdiction where non-resident accounting firm allegedly sent false reports to Florida that it knew would be relied upon in Florida and were relied upon in Florida by plaintiff).

However, as to the jurisdictional evidence related to appellees' invasion of privacy claim, the law firm's affidavits denied and directly refuted all connection to Florida (outside of Broward County litigation that was related to the dismissed abuse of process claim). The affidavits reflected that the investigative reports, which the law firm had no reason to know would be used for an improper purpose, were from a California company. Moreover, within the affidavits, two of the law firm's attorneys expressed a belief that Shabanets—to whom the reports had been provided—resided in California, stating that they had met with him there and never in Florida.

12

Mandel's counter-affidavits, in turn, directly refuted *those* assertions. While Mandel's affidavit merely detailed his long-standing Florida residency and stated that he had suffered harm in Florida, the non-party's affidavit stated: (1) the law firm hired the private investigator to "learn information about Mandel's finances which could not be obtained by subpoena in order to put pressure on him"; (2) the law firm sought to find judgments the conspirators could use to drain Mandel's resources; and (3) such reports were provided to a Florida residence which Shabanets "owned and used."

Because of the discrepancy in the location of where the tortious reports were provided and in Shabanets' residency (and therefore where the disclosure would have disseminated from), the jurisdictional affidavits pertaining to Mandel's invasion of privacy claim cannot be reconciled, necessitating an evidentiary hearing concerning specific jurisdiction under Florida's long-arm statute. *See Venetian Salami*, 554 So. 2d at 503. As to the invasion of privacy claim, we therefore reverse and remand for the trial court to determine whether the jurisdictional facts support specific jurisdiction under Florida's long-arm statute, and, if so, "whether there are 'minimum contacts' which satisfy due process." *See Astillero Regnicoli, S.A.I.C.A. v. North,* 677 So. 2d 26, 27 (Fla. 4th DCA 1996).

### ii. Count VI: Aiding and Abetting a Breach of Fiduciary Duty

The amended complaint's Count VI alleges that the law firm aided and abetted a breach of fiduciary duty. This cause of action requires a plaintiff to establish: 1) "a fiduciary duty on the part of a primary wrongdoer; 2) a breach of that fiduciary duty; 3) knowledge of the breach by the alleged aider and abettor; and 4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Grape Leaf Cap., Inc. v. Lafontant*, 316 So. 3d 760, 761 n.2 (Fla. 3d DCA 2021); *see also Turnberry Vill. N. Tower Condo. Ass'n v. Turnberry Vill. S. Tower Condo. Ass'n*, 224 So. 3d 266, 267 n.1 (Fla. 3d DCA 2017).

To that end, appellees alleged that the Arizona law firm and one of its attorneys (a California resident) knew that several other defendants—including Shabanets—owed fiduciary duties to appellees 8 Speed 8 (an alleged Nevada corporation) and Vibe Micro, Inc. (an alleged Nevada corporation with its principal place of business in Florida), and that said defendants breached their respective fiduciary duties. Appellees further alleged that the law firm substantially assisted and encouraged the wrongdoing by "advising, directing, and assisting" those defendants in transferring the assets and business opportunities of 8 Speed 8 to Rain Kiosk (not an alleged Florida entity) and ISS (an alleged Nevada limited

liability company), so that the assets could be sold to Payteller and Card Platforms (two alleged Florida companies). Additionally, with respect to the relevant jurisdictional allegations, appellees alleged that Shabanets "possessed a Florida driver's license and maintained a [Florida] residence . . . at the time of the events complained of in this case."

As with the invasion of privacy claim, assuming these allegations were not sufficiently countered by the affidavits in support of the law firm's motion to dismiss, these allegations could also be sufficient to support a finding of personal jurisdiction, as appellees contended that the law firm directed tortious conduct into Florida through its actions in advising and aiding Shabanets concerning the breach while Shabanets maintained a Florida residence. *See Wendt*, 822 So. 2d at 1260; *Stonepeak*, 231 So. 3d at 555; *cf. Metnick*, 123 So. 3d at 645–46 (concluding that alleged acts giving rise to claim of tortious interference arose in New York, where lawyer allegedly convinced a *New York resident* to breach a contract, although the contract was breached in Florida and loss of income was to a Florida firm).

The affidavits of the law firm's attorneys denied that the law firm's actions implicated in appellees' aiding and abetting breach of fiduciary duty claim were directed into or occurred in Florida. Moreover, within the affidavit of the attorney with whom appellees mainly take issue, he asserted that the law firm did not create or advise anyone to create ISS, that the transaction documents concerning Payteller were prepared by another law firm, and that all his work concerning the Payteller transaction occurred in California. And, as already stated, the law firm's attorneys' affidavits established that they believed Shabanets lived in California and had met with him there.

In response, appellees filed affidavits that focused mainly on the abuse of process and invasion of privacy claims, which were not at issue in count VI. In fact, although appellees alleged multiple breaches of fiduciary duties as part of counts I and II, count VI—the aiding and abetting breach of fiduciary duty claim at issue—purely concerned the law firm's role in "advising, directing and assisting" the conspirators to "transfer assets and business opportunities . . . to Rain Kiosk and ISS[.]" Indeed, in appellees' response in opposition to the motion to dismiss, appellees addressed count VI solely in the context of aiding and abetting the conspirators in diverting assets and business opportunities—not in relation to any other action or claim.[9]

---

[9] While appellees briefly mention the litigation at issue in the abuse of process claim, appellees did so to reinforce their claim that the law firm "was well aware that [the conspirators'] dealings with Payteller and CardPlatforms [sic] were

In any event, the non-party's countervailing affidavit provided that Shabanets "owned and used" a Florida residence and that the law firm advised on transactions that diverted 8 Speed 8's business opportunities, thereby compensating him, Shabanets, and Guarino. Though the non-party's affidavit stated that Shabanets had "owned and used" his Florida residence when *the reports connected to the invasion of privacy claim* were provided to him, the necessary implication was that Shabanets "owned and used" the same residence while the law firm purportedly aided and assisted in the breach of Shabanets' fiduciary duties through tortious communications directed into Florida.

We find an evidentiary hearing appropriate as to the aiding and abetting breach of fiduciary duty claim because of the irreconcilable allegations. Thus, as to count VI, we reverse and remand for the trial court to determine whether the jurisdictional facts support specific jurisdiction under Florida's long-arm statute, and, if so, "whether there are 'minimum contacts' which satisfy due process." *See Astillero Regnicoli*, 677 So. 2d at 26. We note, however, that appellees have failed to establish a basis for specific jurisdiction concerning the law firm's role in allegedly aiding and abetting the other purported conspirators.

**Conclusion**

Even assuming Guarino breached a fiduciary duty owed to 8 Speed 8, nothing alleged in count I of the operative complaint or submitted in response to Guarino's affidavit connects her alleged actions to Florida. Consequently, we reverse the trial court's order denying Guarino's motion to dismiss and remand for the entry of an order dismissing the amended complaint against her for lack of personal jurisdiction.

Because of the irreconcilable allegations as to whether tortious conduct was directed into Florida—we reverse the trial court's order denying the law firm's motion to dismiss and remand for a limited evidentiary hearing on counts VIII and VI to determine whether the trial court had long-arm jurisdiction under section 48.193(1)(a), Florida Statutes (2018). Should the trial court determine that it has specific personal jurisdiction as to either count, the trial court must then conduct a proper "minimum contacts" determination. *See Astillero Regnicoli*, 677 So. 2d at 26.

*Reversed and remanded for further proceedings as set forth herein.*

---

designed to cash out the 8 Speed 8, Inc. asserts [sic] and business opportunities and deprive Vibe Micro, Inc. and Mandel of their interest therein."

KUNTZ and ARTAU, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***